## MANNING v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1923.)

No. 5955.

1. Poisons ⬦⟜4—Order for drugs held not "prescription"; "seller."

An order, signed by a registered physician, calling for a narcotic drug, not issued in the course of his professional practice, but to a habitual user of the drug, for the purpose of providing it for his customary use, is not a "prescription," privileged under Harrison Anti Narcotic Act, § 2 (Comp. St. § 6287h), and where the order is filled by a dealer with knowledge of the facts, the physician is chargeable as a

---

⬦⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

seller," under Criminal Code, § 332 (Comp. St. § 10506) making aiders and abettors principals.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prescription; Seller.]

**2. Criminal law ☞1170½(5)—Permitting cross-examination of defendant as to past prosecutions for misdemeanors held error.**

Permitting cross-examination of a defendant at great length respecting prosecutions, against him for misdemeanors, 15 to 25 years previously, for the ostensible purpose of affecting his credibility, *held* prejudicial error

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Criminal prosecution by the United States against Thomas S. Manning. Judgment of conviction, and defendant brings error. Reversed.

Arthur L. Oliver, of St. Louis, Mo., for plaintiff in error.

Vance J. Higgs, Sp. Asst. Atty. Gen., for the United States.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON. District Judge.

JOHNSON, District Judge. Plaintiff in error, hereinafter referred to as defendant, was convicted in the court below on five counts of an indictment charging him with aiding and abetting the violation of section 2 of the Harrison Anti-Narcotic Act (Comp. St. § 6287h).

The counts of the indictment differed only as to the kind and quantity of drugs sold, the day of sale, and name of purchaser. Each count charged in substance that on the date specified, the defendant, a registered physician practicing in St. Louis, Mo., did unlawfully, fraudulently, and willfully aid and abet the sale of certain named narcotic drugs by one Eckert to the person named—not in pursuance of a written order from such person upon a form issued in blank for that purpose by the Commissioner of Internal Revenue—in the manner following: That the defendant did then and there issue a written order purporting to be a prescription to the person named for a certain quantity of narcotic drugs, which so-called prescription was not issued by the defendant in the course of his professional practice only, or for the treatment of any disease from which the said person was suffering, or for the purpose of effecting a cure of the drug habit to which the said person was addicted, but that said prescription was issued by the defendant for the purpose of gratifying the appetite of the said person who was a habitual user of narcotic drugs and in order that such person might continue the customary use thereof, and with the intent that any registered druggist in the city of St. Louis, whose custom and practice it was to fill such so-called prescriptions for narcotic drugs, for addicts, might supply the said drugs to the person named in the prescription, and that the said so-called prescription constituted and was only a subterfuge for the purpose of consummating an unlawful sale of narcotic drugs under the guise of lawfully dispensing said drugs by a registered dealer to a consumer under and in pursu-

ance of a written prescription issued by a physician registered under the act.

Each count of the indictment also alleged that the said Eckert was engaged in the drug business in the city of St. Louis, and had duly registered and paid the special tax required by the Anti-Narcotic Act; that he did upon the date of said so-called prescription willfully and unlawfully sell and dispense the drugs specified to the person named therein not in pursuance of a written order from said person upon a form issued in blank for that purpose by the Commissioner of Internal Revenue, but that he, the said Eckert, knowing the fraudulent purpose of the so-called prescription, and that the person named therein was addicted to the use of said drugs as a habit, used the so-called prescription, as the defendant intended he should do, to cloak the aforesaid unlawful sale and to make said unlawful sale appear to be a proper and legitimate dispensing of said drugs by a dealer to a consumer under and in pursuance of a written prescription issued by a physician registered under the act of Congress.

[1] The first assignment of error to be considered is that the indictment, to quote the language of counsel in his brief:

"Failed to charge the commission of any offense 'defined in any law of the United States,' and for the further reason that the offense which was attempted to be charged against the defendant, was under an act of Congress that is unconstitutional and void, in that it is an attempt to exercise police powers over two citizens of the state of Missouri, and was not authorized by any of the rights reserved to the federal government."

It is argued that:

"There is no charge in any count of the indictment that the plaintiff in error, or the druggist upon whose guilt his conviction must be predicated, had violated any provision of the act, except [the druggist] in pursuance of his business as a drug merchant, and the defendant in pursuance of his profession as a physician. * * * What revenue measure does the offense as charged in this indictment affect? How does it interfere with the government keeping tab on all drugs that Eckert sold or that Manning prescribed? The defendant is not charged with making any sale or of dispensing any drugs or with failure to keep a copy or record of the prescriptions that he issued. The druggist is not charged with failing to keep on file the prescriptions upon which the drugs were sold, * * * the pretended offense charged does not * * * prevent or endanger the federal government in any way from the exercise of its just and lawful rights and powers that are reserved to it under article 1, section 8, of the Constitution of the United States. Such an offense as is charged can only be construed as a regulation of the social and moral relationship among and between the citizens of the state of Missouri. * * *

"But for the passage of the Harrison Anti-Narcotic Act no one would contend for an instant that the acts charged in the indictment against Eckert and defendant Manning constitute any offense against the law of the United States. Since Congress by such act failed to clearly define the crime that is attempted to be charged in the indictment; since Congress by the act failed to say that it was a crime for a registered physician to prescribe for an 'addict' or for a registered druggist to sell, upon a prescription of a registered physician, morphine or cocaine to an 'addict'—then neither this court, the Supreme Court of the United States, nor any other court can read into law by construction the offense that the indictment attempts to charge."

The above quotations sufficiently illustrate the contentions of counsel, which are argued at some length in the brief. The questions here presented are no longer open ones in this court. In Webb v. United States, 249 U. S. 96, 39 Sup. Ct. 217, 63 L. Ed. 497, the Circuit Court of Appeals of the Sixth Circuit had propounded the following question:

"If a practicing and registered physician issues an order for morphine to a habitual user thereof, the order not being issued by him in the course of professional treatment in the attempted cure of the habit, but being issued for the purpose of providing the user with morphine sufficient to keep him comfortable by maintaining his customary use, is such order a physician's prescription under exception (b) of section 2?"

In answer to this question, the Supreme Court said:

"To call such an order for the use of morphine a physician's prescription would be so plain a perversion of meaning that no discussion of the subject is required. That question should be answered in the negative."

The defendants in the Webb Case were convicted on a charge of conspiracy to violate the Harrison Anti-Narcotic Act. The facts as stated in the opinion, were:

"Webb was a practicing physician and Goldbaum a retail druggist, in Memphis. It was Webb's regular custom and practice to prescribe morphine for habitual users upon their application to him therefor. He furnished these 'prescriptions,' not after consideration of the applicant's individual case, and in such quantities and with such direction as, in his judgment, would tend to cure the habit or as might be necessary or helpful in an attempt to break the habit, but without such consideration and rather in such quantities as the applicant desired for the sake of continuing his accustomed use. Goldbaum was familiar with such practice and habitually filled such prescriptions. Webb had duly registered and paid the special tax as required by section 1 of the act. Goldbaum had also registered and paid such tax and kept all records required by the law. Goldbaum had been provided with the blank forms contemplated by section 2 of the act for use in ordering morphine, and, by the use of such blank order forms, had obtained from the wholesalers, in Memphis, a stock of morphine. It had been agreed and understood between Webb and Goldbaum that Goldbaum should, by using such order forms, procure a stock of morphine, which morphine he should and would sell to those who desired to purchase and who came provided with Webb's so-called prescriptions. It was the intent of Webb and Goldbaum that morphine should thus be furnished to the habitual users thereof by Goldbaum and without any physician's prescription issued in the course of a good-faith attempt to cure the morphine habit. In order that these facts may have their true color, it should also be stated that within a period of 11 months Goldbaum purchased from wholesalers in Memphis 30 times as much morphine as was bought by the average retail druggist doing a larger general business, and he sold narcotic drugs in 6,500 instances; that Webb regularly charged 50 cents for each so-called prescription, and within this period had furnished, and Goldbaum had filled, over 4,000 such prescriptions; and that one Rabens, a user of the drug came from another state and applied to Webb for morphine and was given at one time 10 so-called prescriptions for one drachm each, which prescriptions were filed at one time by Goldbaum upon Rabens' presentation, although each was made out in a separate and fictitious name."

In Jin Fuey Moy v. United States, 254 U. S. 190, 41 Sup. Ct. 98, 65 L. Ed. 214, the Supreme Court held that a physician was properly convicted under the act of selling the drug, since under section 332

of the Criminal Code (Comp. St. § 10506) it is provided that "whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal," where it was charged in the indictment that the physician did unlawfully, willfully, knowingly and feloniously sell a specified quantity of morphine to a person named, not in pursuance of a written order, etc., in the following manner, to wit: That the said physician did issue to the person named a certain prescription for said drug when the said person was not his patient, and said prescription was not issued in the course of his professional practice only; the evidence showing that the so-called prescriptions issued by the physician were filled under "circumstances strongly tending to show co-operation between defendant and the proprietors of the drug store." The court said:

"In each case where defendant was found guilty the evidence fully warranted the jury in finding that he aided, abetted, and procured a sale of morphine sulphate without written order upon a blank form issued by the Commissioner of Internal Revenue; and that he did this by means of a prescription issued not to a patient and not in the course of his professional practice, contrary to the prohibition of section 2 of the act. Manifestly the phrases 'to a patient' and 'in the course of his professional practice only' are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs mentioned in the act, strictly within the appropriate bounds of a physician's professional practice, and not to extend it to include a sale to a dealer or a distribution intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug. A 'prescription' issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it. Webb v. United States, 249 U. S. 96."

If, as above stated, "a prescription issued for either of the latter purposes protects neither the physician who issues it nor the dealer who knowingly accepts and fills it," then both the defendant and Eckert the druggist would be guilty under the act if the facts alleged in the several counts of the indictment are true. This court, in the recent case of Smith v. United States, 284 Fed. 673, in discussing the question now under consideration, said:

"Considering the character of the traffic and the difficulty of enforcing this revenue act, we think the requirement that physicians should bona fide prescribe in the course of professional treatment in order to bring them within the exception in the statute is reasonable and germane to the revenue purpose. This is equally true of a sale by a druggist with knowledge that the purchaser is seeking the drug upon a bogus prescription."

In view of the decisions of the Supreme Court above quoted, we deem it unnecessary to pursue further the discussion of the constitutionality of the act or the constitutionality of the construction of section 2 of the act necessary to sustain the indictment in this case. And in view of certain contentions made in the brief of counsel we remark that we are not here attempting to decide whether the act makes it an offense for a physician to issue a prescription in bad faith to addicts without a resulting sale by a druggist, or whether such a prohibition would be constitutional, or whether the physician might be convicted under the act in case the prescription issued by him in

bad faith had been filled by a druggist acting in good faith. No one of these questions is presented by the record in this case.

Without stopping to state the evidence, we are of the opinion that the good faith of the defendant in issuing the prescriptions alleged in the indictment, and the good faith of Eckert, the druggist, in filling them, were rightly submitted to the jury.

[2] The defendant testified as a witness in his own behalf, and the prosecution was permitted to ask him for the purpose, as stated by the court, of affecting his credibility as a witness, if he had ever been convicted of prescribing intoxicating liquor in violation of the laws of the state of Missouri. Over the objection of the defendant, the district attorney was permitted to inquire at great length concerning two or three alleged violations of the state statute by the defendant. The cross-examination touching these transactions covered 10 pages of the record in the first instance, and later in the course of the trial the defendant was recalled by government counsel and the matter again gone into. The defendant was asked concerning a judgment of conviction which had been reversed by the Court of Appeals of the state, and objection to this inquiry was sustained, the court saying:

"If the case was reversed and remanded it does not constitute a conviction."

Counsel for the government persisted and by leading questions succeeded in getting before the jury that part of the opinion which he desired them to know, notwithstanding the ruling of the court theretofore made. These offenses were misdemeanors, and occurred while the defendant was a practicing physician in Vandalia between 15 and 25 years before the trial. Waiving inquiry as to whether the commission of a mere misdemeanor may be proven for the purpose of affecting the credibility of a witness, a question not argued by counsel, we are convinced these matters were too remote to affect his credibility, and the objection should have been sustained on that ground. But, aside from that, it is apparent from reading the record that the purpose actually accomplished was the disparagement of the defendant in the eyes of the jury. The manner of the cross-examination was such as to induce the jury to believe he was guilty of the offenses charged in the indictment because as early as 15 or 20 years ago he had written prescriptions for intoxicating liquor unlawfully. It has been justly said:

"All men stand equal before the law, and have the same constitutional rights and privileges. The high and the low, the poor and the rich, the criminal and the law-abiding, when indicted and accused of crime, are entitled, under the law, to a fair and impartial trial. This is a sacred boon guaranteed to every person, and of which no one should ever be deprived. The law, in its extended reach, power and influence, is as tender of the rights of the man who is supposed to be bad as it is of the liberties and rights of the man who is believed to be good. The trial of every man should be free from undue prejudice or odium, especially upon the part of all officers clothed with the power and charged with the duty of administering the law in such a manner as to reach the ends of justice and of right." Allen v. United States, 115 Fed. 12, 52 C. C. A. 606.

Other errors are assigned, which on the retrial probably will not arise again, at least in the form as here presented, and it is not necessary at this time to consider them.

The judgment is reversed, and the court below directed to grant a new trial.