## GIDEON v. UNITED STATES.
### No. 9123.

Circuit Court of Appeals, Eighth Circuit.
Aug. 10, 1931.

Nat W. Benton and Charles F. Newman, both of Springfield, Mo. (Sam M. Wear, of Springfield, Mo., on the brief), for appellant.

William L. Vandeventer, U. S. Atty., of Kansas City, Mo., for appellee.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment of conviction under an indictment charging the defendant and others with conspiring to violate the National Prohibition Act and a number of the Internal Revenue Statutes. Sev-

eral other defendants were convicted with the appellant, but this appeal is by Gideon alone.

The assignments of error call attention to a number of matters, but especially: First, to the ruling of the court denying the motion to quash the panel of petit jurors; second, to the rulings of the court as to the admission of testimony during the cross-examination of the defendant Gideon; third, to a particular portion of the charge of the court to the jury.

 As to the first, the following occurred at the trial:

"Whereupon, the jury panel being sworn, counsel for the defense requested the court to inquire of the members of the jury panel whether any of them had received any written or printed communication seeking to ascertain their religious affiliations, if any, and seeking to ascertain their views on any matter of issue in this cause, particularly containing the following question: 'Are you in favor of Prohibition?'

"Whereupon, before the ruling of the court, admissions on the part of the government relative to questionnaires received by such jurors and answered by them were made a matter of record before the jury panel was qualified by the court, to-wit:

"The following proceedings were had in the presence but out of the hearing of the jury panel:

"Mr. Newman: Then it is admitted that with the summons mailed by the clerk of this court to each petit juror there was enclosed a printed or typewritten questionnaire containing, among other things, questions for his answer, as follows:

" 'Office of the Clerk of the United States District Court of Kansas City, Mo.

" 'Dear Sir: You have been chosen as a Juror to serve at the next term of the United States District Court as shown by the enclosed summons. In order to complete our jury records, will you please fill in the answers to the questions below and return at once in the enclosed envelope which requires no postage.

" 'Very truly yours,

" 'Edwin R. Durham,
Clerk U. S. District Court.

" 'Q. What is your age?

" 'Q. Married or single?

" 'Q. How many children? Boys Girls

" 'Q. Are you a member of any church, and if so, what denomination?

" 'Q. Are you in favor of Prohibition?

" 'Q. In what business are you engaged?

" 'Q. How long have you been so engaged?

" 'Q. In what other occupations, if any, have you been engaged?

" 'Q. How long have you been a resident of the County where you reside?

" 'Q. Have you ever before served as a Juror in the Federal Court, and if so, when?

" 'Q. Have you ever served as a Juror in the State Courts, and if so, where?

" '_____,

" '(Sign your name here)

" '_____,

" '(Post Office)

" '_____.

" '(Street or Post Office Box)'

"The Court: As I understand it, the clerk sends them out to all jurors, both grand and petit.

"Mr. Vandeventer: Yes.

"Mr. Newman: A franked envelope was enclosed with instructions to fill in the answers and mail the questionnaire back in the franked envelope. It is further admitted that this questionnaire from such jurors as answered it was mailed to the clerk of the court, and that the United States District Attorney now has such questionnaires with the answers thereto in his possession. Is that right?

"Mr. Vandeventer: That is right.

"Mr. Newman: For this reason we move to suppress and quash the jury panel in this case."

The court denied the motion.

We think this ruling was reversible error. Under our system of administering criminal law, the jury is a feature of the very highest importance. The selection of the jury is not a mere gesture. The rhetorical remark of a British statesman that "The whole machinery of the state, all the apparatus of the system, and its varied workings, end in simply bringing twelve good men into a box," carried a real truth. Although men may differ widely as to the merits of the jury system, yet it would seem to be apparent that unauthorized communications with jurors, such as the one here under consideration, whether by private litigants or by public officials, are not calculated to increase respect for the system nor to eliminate its faults.

The sending out of the questionnaire by the clerk was open to numerous and serious objections; it was without authority of law; the United States Marshal was the official authorized to send out a summons to each juror; the clerk had no authority to send it out; much less had either of those officials any authority to send out the questionnaire as an accompaniment to the summons; the questions asked had, with one exception, nothing to do with the qualifications of a juror; there is no authority in the statute for the clerk to keep a record of the jurors summoned based upon such a questionnaire.

The effect of the questionnaire upon the jurors must have been baneful; they must have been led to believe that the government had some purpose in asking questions about their beliefs, and was keeping a record of the answers for future use; they doubtless were led to believe also that, in the minds of the government officials, at least, their usefulness as jurors was in some way affected by the beliefs about which inquiry was made; and it is not impossible that they were led to think that the government intended to influence them in their beliefs. Had such a questionnaire been sent out by attorneys for some of the defendants awaiting trial, we cannot doubt that the proceeding would have been open to severe criticism. We cannot escape the conviction that the sending of the questionnaire under the guise of governmental authority was equally reprehensible.

The qualifications of a juror should be ascertained by questioning in open court in the presence of the parties interested and while the juror is under oath. Secret preliminary questioning is unauthorized, and, in our opinion, should not be encouraged. It is open to the danger of many and serious abuses, and trenches upon the broad ground of fair trial.

■■■ Second. As to the cross-examination of the defendant, about which complaint is made, the record discloses as follows: Defendant Gideon was on trial for conspiracy to violate the National Prohibition Act and certain of the Internal Revenue Statutes. He was mayor of the city of Springfield. He had the appointing power of the chief of police and of the policemen. He testified, in response to a question on cross-examination, that "he did not want any one on the police force who would not enforce the law." He was then asked, still on cross-examination, whether he had not retained Chief of Police Pike on the force after the latter had been convicted of conspiracy to violate the National Prohibition Act and pending his appeal, which he admitted; whether he had not visited him in the penitentiary after his conviction, which he denied; whether he had not

appointed to the police force a man who had been convicted of highway robbery; he answered that he had appointed the man and later had learned that he had been convicted; whether this man's son, who was known as a bootlegger, had not stayed at his (defendant's) house; he denied this; whether he had not appointed to a position on the police force a man that he had heard had been convicted of assault; he denied having heard this about the man; whether he had not appointed to the police force a man that he had heard had been convicted of indecent exposure; he denied having heard this. None of these matters had been gone into on the examination in chief of defendant. Some of them had occurred outside the period of the alleged conspiracy, and had no bearing thereon.

This cross-examination was permitted on the theory that it went to the credibility of the witness, and as bearing on what the defendant 'had in mind' at the time of making the appointments.

We think too great latitude was allowed in this cross-examination of defendant. It is not permissible under the guise of testing the credibility of a defendant to question him on cross-examination about matters not touched upon in the examination in chief nor pertinent thereto; not tending to prove the charge upon which the defendant is being tried, but the sole tendency of which is to prejudice the defendant in the eyes of the jury.

The rule in regard to cross-examination has been stated by this court in Harrold v. Territory of Okla., 169 F. 47, page 51, 17 Ann. Cas. 868 (C. C. A. 8) as follows: "He [the witness] may be cross-examined upon the subjects of his direct examination, but not upon other subjects; impeaching questions relative to facts not collateral to the issue—that is to say, relative to facts which the prosecutor is entitled to prove as a part of his case—may be lawfully propounded to him * * * but such questions relative to facts that may not be so proved may not be asked him. * * * For these are the limits of the cross-examination and of the lawful evidence of impeachment of other witnesses." And again (page 52 of 169 F.): "The party on whose behalf a witness is called has the right to restrict his cross-examination to the subjects of his direct examination, and a violation of this right is reversible error." See, also, Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 F. 668, 674 (C. C. A. 8); Heard v. United States, 255 F. 829, 833 (C. C. A. 8); Tucker v. United States, 5 F.(2d) 818, 823 (C. C. A. 8); Havener v. United States, 15 F.(2d) 503, 506 (C. C. A. 8).

Further, when the question was put to defendant on cross-examination whether he would want an officer on the police force about whose integrity there was any question, and defendant had answered in the negative, inasmuch as the matter had not been touched upon in the direct examination, and was a collateral matter, the government was bound by the answer; at least unless it proposed to show that the answer was false and that the falsity had a direct bearing on the charge of conspiracy. No such offer was made by the government, and no such showing was made. See Fisk v. United States (C. C. A.) 279 F. 12, 17; Wilson v. United States, 4 F.(2d) 888 (C. C. A. 8); Smith v. United States (C. C. A.) 10 F.(2d) 787; Rose v. United States, 45 F.(2d) 459, 465 (C. C. A. 8).

We are led to the conclusion that whatever may have been the purpose of the cross-examination referred to, the effect was highly prejudicial to defendant. It had no tendency to prove the charge against him, but was calculated simply to degrade him in the eyes of the jury.

In Allen v. United States (C. C. A.) 115 F. 3, page 11, the court said: "What was the object of these improper questions? What was the motive? Was it not for the purpose of degrading the defendant before the jury? Such was evidently the effect, whether so intended or not. * * * Such an examination was irrelevant, unjust, unfair, and clearly prejudicial. * * * It was for the purpose of showing that his habits were bad, * * * and to endeavor to secure his conviction upon general principles, independent of the testimony offered as to his guilt or innocence, weak or strong as it might be."

Later on in the same opinion the court approvingly quoted from State v. Lapage, 57 N. H. 245, 289, 24 Am. Rep. 69, the following language: "'It is quite inconsistent with that fairness of trial to which every man is entitled that the jury should be prejudiced against him by any evidence except what relates to the issue; above all should it not be permitted to blacken his character, to show that he is worthless.'" See, also, Paquin v. United States, 251 F. 579 (C. C. A. 8); Manning v. United States, 287 F. 800, 805 (C. C. A. 8); Newman v. United States (C. C. A.) 289 F. 712; Havener v. United States, supra.

**Third.** The portion of the charge of the court to which our attention is called is as follows: "Now, gentlemen, in your deliberations, it will require the concurring judgment of all twelve of your number to return a verdict in this case. No smaller number of men can return a verdict; and in your deliberations, gentlemen, you should confer with each other dispassionately. There may be arguments among you. Such arguments should be carried on dispassionately because you should bear in mind that it isn't a question of one or two or three jurors having their own way about something, but that it is a question of you gentlemen arriving at the truth, and if, perchance, in the course of your deliberations there should be a minority, on one side or the other, on the questions involved, then I now admonish such a minority that he should view with more or less distrust his own judgment, or whether it be one or more than one, if it be a minority, that they bear in mind all the time that the judgment of the majority is superior to the judgment of the minority, and the minority should view with distrust its own judgment as to the facts, never surrendering an honest conviction. Each juror should deliberate and where he has an honest conviction of the truth of a matter, even though all the jurors should be against him, he should adhere to his own honest conviction and not surrender that, but he should be in a position to confer with his fellows and when a majority of the jurors are against him, then he should view his own judgment with distrust, and he should listen to the arguments of the majority with the idea that he might be wrong in his conviction, and with the purpose of getting right in his judgment before he expresses himself in the form of a verdict or declines to express himself in the form of a verdict."

It is to be noted that this charge was given to the jury in the first instance; not after the jury had deliberated and had been unable to agree. Even in the latter situation, this court has repeatedly disapproved charges to the jury which were couched in language not dissimilar to that used in the case at bar.

In the case of Stewart v. United States, 300 F. 769, 785, this court, in an opinion written by Judge Walter H. Sanborn, carefully and exhaustively examined the subject of language proper to be used in charging a jury on the matter of agreement, and disapproved of the language used in the supplemental charge in that case, though it was no stronger than that used in the case at bar.

Similar rulings have been made by this court in Nigro v. United States, 4 F.(2d) 781; Chicago & E. I. Ry. Co. v. Sellars, 5 F.(2d) 31; Edwards v. United States, 7 F.(2d) 598.

We think the charge above quoted given in the case at bar was not sufficiently guarded, and had a decided tendency toward coercion of a possible minority to an agreement, even against the dictates of their own judgment.

For the reasons above given, the judgment is set aside, and the cause remanded to the trial court, with instructions to grant a new trial.