# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-240

**STATE OF LOUISIANA**

**VERSUS**

**DOMENIQUE NELSON BRYANT**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 11445-19
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**********

## CHARLES G. FITZGERALD
## JUDGE

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Charles G. Fitzgerald, Judges.

**CONVICTIONS AFFIRMED.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, Louisiana  70502**
**(337) 366-8994**
**Counsel for Defendant/Appellant:**
         **Domenique Nelson Bryant**

**Stephen C. Dwight**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**Counsel for Appellee:**
         **State of Louisiana**

**FITZGERALD, Judge.**

Defendant, Domenique Nelson Bryant, appeals his convictions for being a principal to armed robbery with a firearm and possession of a firearm by a convicted felon.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Just after sunset on June 8, 2018, Gilbert Greene answered his door to find a young woman who asked to use his phone. She explained that her cellphone had died and that she needed to call her uncle to pick her up. Greene invited the woman into his home. Greene then went to the kitchen to retrieve his phone. As he returned, he noticed that the woman was now accompanied by another person. This person, a man, stood in front of the woman. Greene asked, "Who are you?" In response, the man shot Greene two times.

Still alive, Greene watched as a second man entered his home. This man walked over to Greene, pointed a gun at Greene's head, and began kicking him. Greene watched helplessly as the shooter (the first man) robbed him of his money and other belongings. Greene survived. He was seventy-five years old when this happened.

Over the next twelve months, all three perpetrators were arrested. Defendant was originally charged by bill of information with attempted first-degree murder and armed robbery with a firearm. After two amended bills were filed, Defendant was ultimately charged with being a principal to armed robbery with a firearm, a violation of La.R.S. 14:24 and 14:64, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. Defendant pled not guilty to the amended charges, and the matter proceeded to jury trial.

However, after the jury had been selected and sworn (but before opening statements), Defendant filed a motion for mistrial, alleging prejudicial conduct by the State during jury selection. The trial court denied the motion. In response, Defendant filed an emergency supervisory writ application. This court denied the writ application, finding no error in the trial court's ruling. *See State v. Bryant*, 20-69 (La.App. 3 Cir. 1/27/20) (unpublished opinion), *writ denied*, 20-171 (La. 1/28/20), 291 So.3d 1056.

Trial began in January 2020. At the close of evidence, the jury found Defendant guilty of both charges. Prior to sentencing, the State filed a habitual offender bill, and Defendant was adjudicated as a second felony offender. Defendant was then sentenced as follows: for his conviction of being a principal to armed robbery with a firearm, Defendant was sentenced to thirty-three years without benefit of parole, probation, or suspension of sentence. But this conviction also implicated the firearm enhancement statute.[1] Under this statute, Defendant was sentenced to serve an additional five years to run consecutively with the thirty-three-year sentence. As to Defendant's conviction for possession of a firearm by a convicted felon, he was sentenced to ten years without benefit of parole, probation, or suspension of sentence; this sentence was ordered to run concurrently with the thirty-three-year sentence. Defendant appealed.

---

[1] Louisiana Revised Statutes 14:64.3(A), known as the firearm enhancement statute, provides:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64 [Armed robbery].

On appeal, Defendant asserts the following assignments of error:

1.  The State failed to sufficiently prove that Defendant was guilty of either criminal offense; and

2.  The trial court abused its discretion and committed reversible error when it denied Defendant's motion for a mistrial due to prejudicial error during jury selection.

## LAW AND DISCUSSION

### I.  Errors Patent

In accordance with La.Code Crim.P. art. 920, we review appeals for errors patent on the face of the record. After reviewing the record, we find no errors patent.

### II.  First Assignment of Error

Defendant asserts that the State failed to prove beyond a reasonable doubt that he was guilty of either being a principal to armed robbery with a firearm or possession of a firearm by a convicted felon. Defendant thus challenges the sufficiency of the evidence.

A sufficiency-of-the-evidence challenge is reviewed on appeal under the standard set forth by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521. The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

3

A reviewing court must afford great deference to a jury's decision to accept or reject the testimony. *State v. Allen*, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So.2d 566, and 02-2997 (La. 6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404 (2004). "Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency." *Id.* at 626.

### A. Summary of the Trial Testimony

Three people were arrested for the criminal offenses at issue in this appeal: Mildred Godley, Sydney Bland, and Defendant.

At trial, Mildred Godley admitted that she had participated in the robbery of Greene on June 8, 2018. The plan, according to Mildred, was for the three of them (Mildred, Sydney, and Defendant) to rob Greene. Mildred recalled that Greene owed Defendant some money, at least that is what Defendant had told her. In any event, on the day of the robbery, Defendant met Mildred and Sydney at their home; Mildred and Sydney lived together with their young daughter. The three participants piled into Defendant's vehicle, and Defendant drove them to Greene's neighborhood. Once there, Mildred recalled that Defendant drove back and forth in front of Greene's house approximately twenty times to determine if he was alone.

Eventually, Defendant parked his vehicle near Greene's home. Mildred testified that her role, as she understood it, was to knock on Greene's door, and then once inside, she would be able to let Defendant into the home. Mildred performed her role as planned. Thus, when Greene answered his door, Mildred asked to use his phone. Mildred explained to Greene that she and her boyfriend had gotten into a fight, that her cellphone was dead, and that she needed to call her uncle to pick her

4

up. During her conversation with Greene, Mildred's cellphone was actively connected to Defendant's cellphone; this active call allowed Defendant to hear everything that was happening. According to Mildred, she and Greene talked for a little while before she let Defendant inside Greene's home. But once Defendant was inside, Mildred testified that she heard the men (Defendant and Greene) begin arguing, followed by two gunshots. Mildred clarified that she did not actually see Defendant shoot Greene.

Mildred testified that she immediately ran out of the home, jumped inside the vehicle with Sydney, and then told him that he needed to go see what was going on because Greene had been shot. Sydney did as he was told. Mildred, meanwhile, climbed into the driver's seat and waited for Sydney and Defendant to come out. But only Sydney came out, and he hurried to the car, telling Mildred that she needed to get Defendant out of the house because he was "tripping and that he shot the man twice."

Mildred, in turn, reentered the house and came upon Greene. She told Greene, who was badly injured and lying on the living-room floor, to give his money to Defendant if he wanted to live. She then told Defendant to hurry and get out. Next, Mildred recalled that she and Defendant ran out of the house together; they hurried into the vehicle, and Sydney sped them away from the scene. After a quick stop, they ended up at Sydney's friend's house, where they split the money and hid from the police. But a few days later, Mildred turned herself in.

On cross-examination, Mildred acknowledged pleading guilty to second-degree robbery in exchange for her testimony against Defendant, whom she identified in open court. Mildred was asked about a prior inconsistent statement that she had given to police. Mildred explained that she originally lied to the police out

of fear; she thought that by lying she could protect both herself and Sydney. Mildred then told the jury that she decided to tell the truth once she received a plea offer. According to Mildred, the prosecutor simply asked her to tell the truth.

Turning now to Sydney Bland's testimony. Sydney explained to the jury that he agreed to testify against Defendant in hopes of obtaining a more lenient sentence. Sydney had already pleaded guilty to armed robbery with a firearm and possession of a firearm by a convicted felon, and he was awaiting sentencing. Like Mildred, Sydney stated that the prosecutor only asked him to testify truthfully. But unlike Mildred, Sydney had not been offered a plea deal in exchange for his testimony.

As to the robbery, Sydney identified Defendant in open court. Sydney testified that he and Defendant had discussed the details beforehand: he knew Defendant intended to rob Greene, and he was happy to help. However, Sydney clarified that Defendant never said anything about bringing a gun or harming Greene.

Nevertheless, on the day of the robbery, Sydney explained that once Defendant parked his vehicle near Greene's home, both Mildred and Defendant jumped out while he remained inside the vehicle. Sydney watched Mildred knock on Greene's door and then walk inside. Defendant then entered the home. But after about twenty minutes, Sydney became worried and decided to go into the home to check on things.

Immediately upon entering the home, Sydney saw Greene lying on the floor bleeding. Mildred was standing nearby. Sydney explained that Defendant then walked over and handed him a gun. Sydney, in turn, pointed the gun at Greene's head and began kicking him. But this did not last long because he (Sydney) started panicking and fled to the vehicle, which is where he met up with Mildred and

Defendant. The three of them then sped away. Sydney testified that he did not recall seeing Defendant steal anything, nor did he remember splitting up any money later that evening. He did admit, however, that he was high on methamphetamines at the time of the incident.

On cross-examination, Sydney admitted that he did not tell the police anything at first, but after he was arrested, he had an opportunity to look at the reports and the witness statements. After seeing all the evidence against him, he decided to cooperate with the prosecutor. Sydney also acknowledged that he originally denied holding Greene at gunpoint. But when he realized that his story was not going to work, he decided to tell the truth. Sydney testified that only he and Mildred went to his friend's house after the robbery; Defendant was not there.

Many other witnesses testified at trial, including Greene. Greene's testimony was consistent with Mildred and Sydney's testimony, but Greene also testified as to the money and other items of value that were taken from him; Greene, while lying on the ground bleeding, watched helplessly as Defendant took these items.

### B. Principal to Armed Robbery with a Firearm—Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence to convict him of being a principal to armed robbery with a firearm. In fact, Defendant argues that he has been wrongfully accused (and convicted) because he had nothing to do with the armed robbery of Greene on June 8, 2018.

"Armed robbery" is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). In addition, "All persons concerned in the commission of a crime,

7

whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24.

The Louisiana Supreme Court in *State v. Neal*, 00-674, p. 12 (La. 6/29/01), 796 So.2d 649, 659, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002) (citation omitted), explained that "the defendant's mere presence at the scene is not enough to 'concern' him in the crime. Only those persons who knowingly participate in the planning or execution of a crime may be said to be 'concerned' in its commission, thus making them liable as principals."

Thus, for this court to affirm Defendant's conviction, we must determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that Defendant knowingly participated in the armed robbery of Gilbert Greene.

As addressed previously, Mildred identified Defendant at trial. Mildred testified that she knocked on Greene's door; that she let Defendant inside Greene's home; that she heard Defendant and Greene argue, followed by two gunshots; that she told Greene to give his money to Defendant if he wanted to live; and that the stolen money was divided up later that evening. Similarly, Sydney testified that he and Defendant planned the robbery in advance; that once he entered Greene's home, he (Sydney) saw Greene on the ground bleeding; and that Defendant then handed him a gun. Greene's testimony was essentially the same, though Greene provided more detail about the things of value that were taken from him.

As stated by the Louisiana Supreme Court in *State v. Higgins*, 03-1980, p. 6 (La. 4/1/05), 898 So.2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182 (2005): "[I]n the absence of internal contradiction or irreconcilable conflict with the physical

evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion."

Here, multiple witnesses testified against Defendant. And although Mildred was also charged in this incident and benefited from a plea bargain made in exchange for her testimony, the jury was made aware of that fact, and Defense counsel questioned her about her credibility. This is also true of Sydney's testimony, even though he was not testifying pursuant to a plea agreement. But here too, the jury was made aware of these facts, and Defense counsel examined Sydney about his credibility. In the end, the jury believed the witness testimony about Defendant's involvement in the armed robbery.

As summarized by the Louisiana Supreme Court in *State v. Neal*, 796 So.2d at 658-59 (citations omitted):

> [T]he jurisprudence in Louisiana generally holds that an accomplice is qualified to testify against a co-perpetrator even if the prosecution offers him inducements to testify; such inducements would merely affect the witness's credibility. As the United States Fifth Circuit has found, "a conviction may be based even on uncorroborated testimony of an accomplice or of someone making a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face." *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir.1991).

Based on the foregoing, we conclude that a rational trier of fact could have found proof beyond a reasonable doubt that Defendant was guilty of the crime of being a principal to armed robbery. It was the jury's prerogative to assess the credibility of the witnesses and to accept or reject their testimony. We will not second guess the jury's credibility determinations, nor will we impinge on its role as factfinder. Accordingly, Defendant's conviction for being a principal to armed robbery is affirmed.

### C. Possession of a Firearm by a Convicted Felon—Sufficiency of the Evidence

Defendant also challenges the sufficiency of the evidence to convict him of possession of a firearm by a convicted felon.

To convict a person of being a felon in possession of a firearm under La.R.S. 14:95.1, the State must prove beyond a reasonable doubt (1) that Defendant has been convicted of a felony enumerated in this statute; (2) that subsequent to that conviction, Defendant possessed a firearm; (3) that a period of less than ten years has elapsed since Defendant's completion of his sentence, parole, or probation for the prior conviction; and (4) that Defendant had the general intent to commit the offense. *State v. Stewart*, 18-757 (La.App. 3 Cir. 5/1/19), 270 So.3d 741.

"'The general intent to commit the offense [of being a felon in possession of a firearm] may be proved through the actual or constructive possession of the firearm.' If the State can prove actual possession, it has satisfied the intent element of the offense." *Id*. at 746 (quoting *State v. Drayton*, 46,191, p. 8 (La.App. 2 Cir. 4/13/11), 63 So.3d 319, 324, *writ denied*, 11-2343 (La. 6/1/12), 90 So.3d 430).

Here, Defendant does not dispute that he is a convicted felon under this statute and that the ten-year statutory period of limitation has not elapsed. Rather, Defendant argues that there was not sufficient evidence to determine beyond a reasonable doubt that he was the person who possessed the firearm on June 8, 2018.

Therefore, for this court to affirm Defendant's conviction, we must determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that Defendant was in actual possession of a firearm on June 8, 2018.

In sum, our previous discussion as to the sufficiency of evidence for the conviction of being a principal to armed robbery applies to the "possession" element of this offense. And based on the testimony of Mildred, Sydney, and Greene, a rational trier of fact could have found proof beyond a reasonable doubt that Defendant was in actual possession of a firearm on June 8, 2018. Accordingly, Defendant's conviction for possession of a firearm by a convicted felon is affirmed.

### III. Second Assignment of Error

Defendant next asserts that the trial court abused its discretion in denying his motion for mistrial due to prejudicial conduct during jury selection. We review this assignment under the abuse of discretion standard of review. *State v. James*, 16-522 (La.App. 3 Cir. 4/5/17), 216 So.3d 117.

Defendant specifically argues that the State obtained an unfair advantage during jury selection by obtaining and using juror information obtained by another prosecutor in an unrelated case (a murder case) in a different division of the court, and that this information was unavailable to the defense. The juror information at issue included the seating order of the potential jurors, the potential jurors who had been stricken and by whom, the challenges for cause, and the notes taken by the prosecutor in that case.

Defense counsel learned of the above information sharing before the start of voir dire. The trial court, after being apprised of the situation, explained as follows to defense counsel: "Is there an advantage by the State, yeah; but you have every opportunity in questioning . . . [the potential jurors] to undo that advantage."

A short time later, defense counsel addressed the State's "advantage" with the following argument:

Judge, Defense would move for at a minimum enough of a break in the proceedings to allow us to at least do some research on these jurors. The manifest unfairness to [Defendant] and to us as his counsel where the State has access to all of the notes and all of the questions asked in the previous interviews at voir dire panels with these jurors is, to call it unfair is an understatement.

They have the complete set of notes that [the other prosecutor] and his staff produced through questioning these witnesses. They get to avail themselves to not only their questions but their answers.

They get to have a wealth of resource for potential challenges for cause. If Ms. Stagg[, who is defense counsel in the murder case,] struck someone for cause, the State already knows that. The State then gets to preempt Defense's questioning of these people by preemptive, to repeat myself, to preemptively rehabilitate.

I know for a fact because I was in there listening to Ms. Stagg dismiss one of them last night, that one of them was dismissed for attitude and law enforcement relations.

The State has access to that information and we do not. To call that anything but unfair is ludicrous.

In reply, the State attempted to clarify the situation by explaining to the trial court as follows:

I will indicate for the record that we do have notes from Mr. Johnson as to the State's strikes and to the Defense strikes of the jurors whom are to be questioned.

While we do have those, I think to characterize it as we have a list of the questions and answers, I think is embellishing much because no one in that courtroom seemed to have taken that great of notes; so I've got a series of circles and "Xs" that indicate who struck who.

Not to say that that isn't helpful because it is. But no one wrote down answers and questions it doesn't appear.

Shortly after this exchange, the trial court offered to take a break so that defense counsel could meet with Ms. Stagg. In response, Defense counsel stated that he did not know whether a break would alleviate the need for an objection, but he was appreciative of any time given. Thereafter, the judge decided to recess for the day because providing a break would delay voir dire until late that afternoon.

Defense counsel objected, arguing that this would create an even greater disadvantage because the prosecutors from the different cases would have additional time to speak with each other. Defense counsel also pointed out that there was no guarantee that Ms. Stagg would share any of the jury venire information. The judge nevertheless maintained his decision to recess for the day, noting that he was trying to make things as fair as possible.

The following morning, the trial court again acknowledged that the State had an advantage, but the court pointed out that the defense had every opportunity during its questioning of the potential jurors to alleviate this advantage. Defense counsel, in turn, asked for a continuance. This motion was denied. And instead of moving to have the jury venire quashed, the defense waited until the entire jury had been selected and sworn, and then moved for a mistrial. Although the trial court recognized that it was the proper time to request a mistrial, it denied Defendant's motion.

In response, Defendant sought an emergency supervisory writ. As noted above, this court denied Defendant's writ application, finding no error in the trial court's ruling. *See Bryant*, 20-69.

Now on appeal, the State contends that our previous ruling on Defendant's writ application is the law of this case. We disagree. In fact, it appears that the State's argument is squarely at odds with the statement of law given in *Davis v. Jazz Casino Co., L.L.C.*, 03-276 (La. 6/6/03), 849 So.2d 497. There, the Louisiana Supreme Court explained that

> once a court of appeal declines to exercise its supervisory jurisdiction
> by denying the writ, the court was without jurisdiction to affirm, reverse
> or modify the judgment of the trial court. Thus, any language in the
> court of appeal's earlier writ denial purporting to find no error in the
> trial court's certification ruling is without effect.

*Id.* at 498. For this reason, the law-of-the-case doctrine is inapplicable to this situation. We therefore must decide whether the trial court abused its discretion in denying Defendant's motion for mistrial.

The essence of Defendant's argument is that the information sharing between prosecutors amounted to prejudicial conduct that deprived Defendant of a fair trial under La.Code Crim.P. art. 775 ("[A] mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]").

However, a mistrial is a drastic remedy. *State v. Henry*, 15-321 (La.App. 3 Cir. 11/12/15) 178 So.3d 1134, *writ granted*, 15-2300 (La. 3/24/16), 187 So.3d 984. "The motion should be granted only where the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial." *State v. Smith*, 433 So.2d 688, 696 (La. 1983). And "[f]or an appellate court to reverse a trial court's denial of mistrial, the defendant must show actual prejudice resulting from the underlying error." *State v Hernandez*, 17-803, p. 6 (La.App. 3 Cir. 3/7/18), 241 So.3d 1053, 1058.

In sum, Defendant had to prove substantial prejudice for the trial court to grant the motion for mistrial. And again, the appropriate standard for our review is abuse of discretion.

As to prejudice, Defendant likens the information sharing here to the conduct at issue in *State v. Bates*, 508 So.2d 1346 (La.1987). The prejudicial conduct in *Bates*, however, consisted of *ex parte* juror contact by the district attorney. By comparison, the conduct at issue in our appeal consists of information sharing between prosecutors. In addition, seven jurors in *Bates* had been selected and sworn

14

before defense counsel learned of the district attorney's *ex parte* communication with the entire jury venire—all 100 potential jurors. In our case, defense counsel learned of the information sharing between prosecutors before any potential juror was questioned, meaning Defendant had the opportunity to mitigate the State's advantage during voir dire.

On the facts presented in *Bates*, the supreme court reversed the defendant's conviction for forceable rape, pointing out that "unilateral *ex parte* juror contacts can only result in a skewing of the otherwise impartial administration of justice." *Id*. at 1350. But those facts are not present in this appeal. Indeed, the record before us reflects markedly different facts, so much so that *Bates* has no bearing on the issue now under review.[2]

For a case that does offer some guidance, albeit by analogy, we turn to *State v. Lee,* 93-2810 (La. 5/23/94), 637 So.2d 102. The issue in *Lee* was whether the trial court abused its discretion in denying defense counsel's challenges for cause as to potential jurors who had, the day before, served on a jury in a similar case. The prior case was prosecuted by the same assistant district attorney, who, in the subsequent case (the case against Mr. Lee), referenced the voir dire questions and answers from the previous day. Mr. Lee was not privy to this information. In affirming the trial court's ruling, the supreme court explained: "To the extent defense counsel and defendant were not 'privy' to the questions and answers which had occurred in the previous *voir dire*, defense counsel was not prohibited from questioning those panelists about any of the referenced questions and answers." *Id*. at 108.

---

[2] In further support, Defendant cites *State v. Singleton*, 352 So.2d 191 (La.1977). Yet this opinion is not helpful to Defendant's position. Quite the opposite, in fact.

In the appeal before us, the record does not reveal that the trial court's denial of Defendant's motion for new trial was arbitrary or unreasonable. The conduct at issue consists of information sharing between prosecutors; defense counsel learned of the information sharing before any potential juror was questioned; and defense counsel had the opportunity to mitigate the State's advantage, if any, during voir dire. There is simply no showing that this information sharing amounted to prejudicial conduct sufficient to deprive Defendant of a fair trial.

The trial court did not abuse its discretion in denying Defendant's motion for mistrial. This assignment is without merit.

## DISPOSITION

For the above reasons, Defendant's convictions are affirmed.

**CONVICTIONS AFFIRMED.**