STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


15-321 c/w 15-322


STATE OF LOUISIANA

VERSUS

LATRACUS HENRY


**********


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NOS. 175,213-A & 182,135-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David Kent Savoie, Judges.


**REVERSED AND REMANDED.**

David Edwin Lafargue
Assistant District Attorney – 12th Judicial District
P. O. Box 277
Marksville, LA 71351
Telephone: (318) 253-7521
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Charles A. Riddle, III
District Attorney – 12th Judicial District
P. O. Box 1200
Marksville, LA 71351
Telephone: (318) 253-6587
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Myles J. Johnson**
**10105 NE 125th Drive #4**
**Kirkland, WA 98034**
**Telephone: (504) 234-8264**
**COUNSEL FOR:**
     **Defendant/Appellant - Latracus Henry**

**THIBODEAUX, Chief Judge.**

Defendant Latracus Henry appeals his conviction for possession of a firearm as a convicted felon[1] and sentence of 26 years at hard labor without the benefit of probation, parole, or suspended sentence. During jury deliberations, jurors discovered that a woman had died the night Mr. Henry was in possession of a firearm. The jurors sent a note to the judge asking whether this knowledge disqualified the jury. Information about the woman's death had not been admitted into evidence at trial and defense counsel moved for a mistrial based on the note. The court denied the motion and sent a note back to the jury instructing the members "<u>only</u> to consider evidence <u>admitted</u> in this <u>trial</u> in your deliberation." The jury then returned a guilty verdict by a vote of 10-2. The jury was polled after the verdict was returned, and at least one juror stated that the jury should have been disqualified and that knowledge of the woman's death had "influenced a lot of people."

Mr. Henry appeals both his conviction and his sentence on the grounds that the jury's knowledge of the woman's death prevented him from receiving a fair trial. We have consolidated Mr. Henry's appeal of his conviction with his appeal of his sentence because our decision on his conviction renders the appeal of his sentence moot. Because we find that the jury's knowledge substantially prejudiced Mr. Henry, we reverse the judgment of the trial court and remand the case for a new trial.

---

[1]Louisiana Revised Statutes 14:95.1.

# I.

## ISSUE

We must determine whether jurors' knowledge of the death of a woman the night Mr. Henry was in possession of a firearm prevented the jury from reaching a fair and impartial verdict.

# II.

## FACTS AND PROCEDURAL HISTORY

Latracus Henry was charged with possession of a firearm as a convicted felon and received a jury trial. He was also originally charged with the second degree murder of Dana Schenk, who was shot and died the night Mr. Henry was in possession of a handgun. However, the State chose to proceed only with the felon in possession of a firearm charge. No evidence of Ms. Schenk's death was admitted during the trial. During the jury's deliberations on that charge, the jury sent the trial judge an unsigned note which stated: "Question: It was brought out that the mother was killed the say [sic] night Does that disqualify us." The note apparently referred to Ms. Schenk, whose daughter was a witness for the State during the trial.

The defense moved to disqualify the jury and for a mistrial. Counsel argued that information about Ms. Schenk's death was highly prejudicial. Since jurors were discussing Ms. Schenk's death to the point of wondering whether they ought to be disqualified, the jury was incapable of rendering an impartial verdict. The State countered that a written admonishment would be sufficient to remind the jury only to consider admitted evidence. The trial judge agreed with the State and sent the jury a written note stating: "you are <u>only</u> to consider evidence <u>admitted</u> in

2

this trial in your deliberations." The judge also denied Mr. Henry's motion to disqualify the jury and for a mistrial. Though the judge considered recalling the jury and recharging the jurors, he ultimately did not do so.

The jury returned a guilty verdict by a vote of 10 to 2. After the verdict was rendered, the jury was polled and the trial court explained why the jury was not told about Ms. Schenk's death. The following conversation ensued:

> BY UNKNOWN JUROR: Am I allowed to ask anything?
>
> BY THE COURT: Anything you want now.
>
> BY UNKNOWN JUROR: So he was present when the girl was shot?
>
> BY MR. JOHNSON: [Defense counsel] What's that?
>
> BY MR. RIDDLE: [District Attorney] She wants to ask a (AUDIO STOPPED)
>
> BY UNKNOWN JUROR: I realize, it was sloppy work.
>
> BY MR. RIDDLE: That's when the Judge wrote back and said, just…
>
> BY MR. JOHNSON: Thank you.
>
> BY MR. RIDDLE:… consider the evidence, very strategic reasons why we prosecuted…
>
> BY UNKNOWN JUROR: We should have been disqualified, because that influenced a lot of people.
>
> BY THE COURT: They could have said it in opening and they chose not to and that's not me to question how they preserved that case, (UNTELLIGIBLE), like listen, somebody did die that night, that wouldn't disqualify you, the fact that ya'll hear it, if you follow, and I say it, if you followed my instruction then you're not disqualified cause you can always know things, you can always know other things that revolve around a particular crime, greater things that happened or lesser things, but your if he commits this particular crime…I'm going (UNTELLIGIBLE), but I contemplated all these things in the instruction, but also hadn't been told, you might have said, well

3

you know what we can get him something lesser we're going to get him out…

BY UNKNOWN JUROR:  But I feel that's what we were manipulated into doing.

BY THE COURT:  Not if you followed my instructions what ya'll were charged with.

BY UNKNOWN JUROR:  It was hearsay, yes, I understand.  It just feels like it was a manipulation.

BY THE COURT:  What can we, I mean she died what can we…

BY UNKNOWN JUROR:  I understood (UNINTELLIGIBLE).

BY UNKNOWN JUROR:  But you said, she said it was an accident?  Did she say it was his stray bullet?

BY THE COURT:  That's why that case wasn't presented to you.

BY UNKNOWN JUROR:  And no weapons were found, no residue test were done, it's a technicality of the law, but it's a manipulation.

BY MR. RIDDLE:  But what you're bringing up are things that would have been difficult to prove manslaughter…

BY UNKNOWN JUROR:  That's why they didn't go that route.

BY MR. RIDDLE:  …if she says it was an accident, there was no gun residue, there's was no weapon found.

BY UNKNOWN JUROR:  So we went underneath and did something a little dirtier they got more years…

At the sentencing hearing, Mr. Henry was adjudicated a habitual offender and sentenced to 26 years at hard labor without the benefit of parole, probation, or suspension of sentence.  Mr. Henry appeals his conviction, arguing that the trial court abused its discretion in denying his motion to disqualify the jury and declare a mistrial after the jury was influenced by substantially prejudicial information.

III.

## LAW AND DISCUSSION

Every person charged with a crime has a right to an impartial trial. La.Const. art. 1 § 16. "Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." La.Code Crim.P. art. 775. However, mistrial is a drastic remedy and should not be ordered absent a showing that the jury was exposed to the prejudicial conduct "and were so impressed by it as to be incapable of rendering a fair and impartial verdict." *State v. Russell*, 416 So.2d 1283, 1290 (La.1982), *cert. denied*, 459 U.S. 974 (1982) (citations omitted). The decision as to whether a mistrial should be ordered because of actual prejudice to the defendant is within the sound discretion of the trial judge and will not be overturned except on a finding of abuse of discretion. *State v. Clark*, 02-1463 (La. 6/27/03) 851 So.2d 1055, *cert. denied*, 540 U.S. 1190 (2004) (citing *State v. Wessinger*, 98-1234 (La. 5/28/99) 736 So.2d 162).

In determining whether the jury was incapable of rendering a fair verdict, "[t]he questions we must consider are: Were the jurors who heard the [information] so impressed by [it] as to be incapable of rendering a fair and impartial verdict? Did Defendant suffer substantial prejudice?" *State v. Brandenburg*, 06-1158, pp. 25 (La.App. 3 Cir. 2/7/07) 949 So.2d 625, 642, *writs denied*, 07-538, 07-614 (La. 10/26/07) 966 So.2d 571, 573. The inquiry into whether the jury was incapable of rendering a fair verdict "must center primarily around the facts in each case[.]" *State v. Johnson*, 09-706, pp. 23 (La.App. 4 Cir. 5/26/10) 41 So.3d 188, 1203. Evidence that prejudicial information "infected the

entire jury panel and became a matter of general discussion" would show that the jury was prejudiced and incapable of rendering an impartial verdict. *State v. Banks*, 96-2227, pp. 4 (La. 4/18/97) 692 So.2d 1051, 1053. On the other hand, when members of the jury state that they can continue to be impartial, despite prejudicial knowledge or conduct, a mistrial is not warranted. *Banks*, 692 So.2d 1051; *Brandenburg*, 949 So.2d 625.

Here, Mr. Henry contends the jury did not reach a fair and impartial verdict due to the influence of Ms. Schenk's death. We agree. The record shows that this information became a matter of general discussion within the jury. Ms. Schenk's death became an important enough topic that the jurors needed to consult the judge about whether they ought to be disqualified. At least one juror felt that the death "influenced a lot of people." But, the trial court did not recall jurors to question them on the nature of the information that came out. It did not ask any jurors whether they would be able to render a fair and impartial verdict in light of this information. The trial court's failure to recall and question the jurors should not denigrate the gravity of the jury's concerns. Rather, the trial court's failure to ensure the jury's continuing impartiality, coupled with the fact that the jurors themselves believed disqualification may have been warranted, shows actual prejudice to the defendant that made a fair trial impossible.

Moreover, it cannot be said that the jury's knowledge of Ms. Schenk's death did not impact the jury's verdict. An appellate court should not overturn a conviction if the guilty verdict was "surely unattributable" to an error. *State v. Johnson*, 94-1379, pp. 14 (La. 11/27/95) 664 So.2d 94, 100 (citing *Sullivan v. Louisiana*, 508 U.S. 275 (1993)). In this case, ten jurors voted in favor of conviction, the minimum required to convict for this offense. La.Code Crim.P. art.

6

782(A).  At least one juror believed that members of the jury were influenced by knowledge of Ms. Schenk's death.  If even one juror voted in favor of conviction based on knowledge of Ms. Schenk's death, then that knowledge and the trial court's failure to recall and question the jury contributed to the guilty verdict.  *C.f. State v. Pontiff*, 14-1049 (La.App. 3 Cir. 5/16/15) 166 So.3d 1120.

Based on the jury's knowledge of Ms. Schenk's death, jurors' concerns about the influence of that knowledge on their deliberations, the trial court's failure to recall and question the jury, and the jury having rendered a 10-2 verdict, we find that Mr. Henry did not receive the impartial trial he is guaranteed by La.Const. art. 1 § 16.  We, therefore, reverse Latracus Henry's conviction and remand this case for a new trial.

IV.

## CONCLUSION

For the foregoing reasons, Defendant Latracus Henry's conviction is vacated, and this case is remanded to the trial court for a new trial.

**REVERSED AND REMANDED.**