STEWART, J.
 

 _JjThe defendant, Carlos Dewayne Dray-ton, was convicted of possession of a firearm by a convicted felon and sentenced to 13 years’ imprisonment at hard labor, without benefits, and fined $1,000 plus court costs. The defendant now appeals. One attorney-filed assignment of error concerns his sentence, and four pro se assignments of error concern his initial detention by officers, double jeopardy, ineffective assistance of counsel, and sufficiency of the evidence. Finding no merit to these assignments of error, we affirm.
 

 FACTS
 

 On the evening of May 31, 2008, residents of Jason Drive in Monroe saw the defendant walking in the neighborhood while brandishing a pistol, talking loudly, cursing, and crying. A resident called 911, and five police officers were dispatched to the scene. Three of the officers approached the defendant with guns drawn and ordered him to the ground. After some hesitation, the defendant complied. The officers then cuffed and searched the defendant. They found a Glock handgun in the right rear pocket of the defendant’s pants. The gun was not loaded. After being read his rights, the defendant admitted that he was a convicted felon and knew he was not supposed to have a firearm.
 

 By a bill of information filed on July 28, 2008, the state charged the defendant with terrorizing, a violation of La. R.S. 14:40.1, and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. At a preliminary examination on October 6, 2008, the trial court found probable cause to hold the defendant for the firearm charge, but not for the terrorizing 12charge. However, the state maintained the terrorizing charge, and it was included in an amended bill of information filed on April 26, 2010, the day jury selection commenced for the trial.
 

 Donna Jackson, the resident who called 911, testified that she was sitting outside of her kitchen door watching her grandchildren play when she saw the defendant, whom she knew as Carlos, walking by with a “big, black gun” while crying and cursing. Because she was afraid that someone would get shot, Jackson called 911 after making sure that her grandchildren were hiding out of the defendant’s sight. Her call was put through to the Monroe Police Department. Jackson related to the operator that the defendant was wearing shorts that were pulled down low and that he was not wearing a shirt. Jackson’s phone call to 911 and conversation with the police department operator were played for the jury.
 

 Evonne Marie Colemen, another resident of Jason Drive, was also outside with Jackson when the defendant walked by with a gun while talking loudly and cursing. She said that he sat on the sidewalk and that she walked up to him to ask what was wrong with him. Coleman explained that the defendant was her kin. According to Coleman, the defendant put the gun on the ground beside him and said that he was tired of people messing with him. She described the defendant as talking “crazy” and “out of his head.” Coleman then took her grandchildren inside and went to get the defendant’s sister. Coleman testified
 
 *322
 
 that the defendant’s sister talked to him then went back across the street. The defendant, who still had the gun, got up and began walking again at which point the police arrived. Coleman | ¡¡testified that the defendant was wearing blue jeans and did not have on a shirt.
 

 Jarod Desadier, Scott Martinez, Todd Vinson, Tim Antley, and Dean Baugh, the police officers dispatched to Jason Drive in response to Jackson’s 911 call, all testified. According to their testimony, Desadier, Martinez, and Vinson approached the defendant while Antley kept watch around the perimeter. Baugh arrived last and was the arresting officer. The officers had slightly different recollections of their encounter, particularly as to which officer retrieved the weapon from the defendant and what the defendant was wearing. The jury was made well aware of these inconsistencies through cross-examination.
 

 Desadier testified that the defendant was wearing dark blue jean shorts and a shirt and that he sat on a chair when he saw the police approaching. When they ordered the defendant to get on the ground with his hands spread out in front of him, he gave them a “thousand-yard stare” but eventually complied. Desadier said the defendant was cuffed and then Vinson
 
 Mirandized
 
 him. They asked if they could search him and if he had a gun. He consented to be searched but did not respond to the gun query. Desadier testified that he found the gun in the defendant’s right back pocket. He stated that the shorts were big and baggy so that the gun could not be seen in the pocket. De-sadier said that he handed the gun to Vinson, who then gave it to Baugh.
 

 Martinez’s testimony was substantially the same as Desadier’s. He testified that the defendant did not immediately get on the ground as ordered [4but instead stared at them and looked confused. He further testified that he and Desadier conducted the pat down and that Desadier retrieved the gun from the defendant’s pocket and handed it to Vinson. Differing from Desa-dier’s testimony, Martinez testified that the defendant was not wearing a shirt and that only Baugh
 
 Mirandized
 
 the defendant.
 

 Vinson initially testified that he found the gun in the defendant’s pocket, but he later admitted that he did not specifically recall getting it out of the pocket. He knew that he did have his hands on the gun and that he handed it to Baugh and told him where it was found. He stated that Desadier could have retrieved the gun from the defendant’s pocket and handed it off to him. Vinson admitted he had some doubt as to how exactly the events played out but that he had no doubt that the gun was found on the defendant.
 

 Antley described the situation as dynamic and stated that it was common for police officers to have different recollections of the details. He recalled that Desadier was holding the defendant on the ground and retrieved the gun from the defendant’s back pocket. Desadier then handed the gun off to Vinson so as not to break contact with the defendant.
 

 Finally, Baugh testified that he arrived last at the scene. Antley was guarding the perimeter and the other three officers were ordering the defendant to get on the ground. Baugh only saw Vinson with the gun. His narrative report states that Vinson retrieved the gun from the defendant’s right rear pocket. Baugh testified that Vinson cleared the gun and then gave it to him. After locking the gun in the trunk of his patrol car, Baugh |
 
 ^Mirandized
 
 the defendant, who said he understood his rights. Though the defendant’s behavior had led the officers to suspect he might be under the influence of a drug such as “PCP,” Baugh did not find him to be im
 
 *323
 
 paired when speaking to him, and the defendant said he was not on “PCP.” The defendant admitted to Baugh that he was a convicted felon and that he knew he was not supposed to have a gun. He admitted that he had the gun but stated that he did not own it. Lastly, Baugh recalled that the defendant was wearing dark, baggy shorts and that he was not wearing a shirt.
 

 The defense stipulated to the defendant’s prior felony conviction on March 13, 2003, for aggravated assault on a peace officer with a firearm.
 

 After the state rested, the defendant’s sister, Latonya Drayton, testified. She stated that she had found the gun in a ditch and kept it at her house because she did not know what to do. On the day of her brother’s arrest, she had wrapped the gun in a pair of pants and put it on top of some laundry in a basket. She carried the basket with her outside to show the gun to some friends and ask them what she should do. While outside, she realized that she had left some food cooking so she hurried home. The pants with the gun fell out of the basket as she was running home. She claimed that the police got the gun from the pants on the ground, not from her brother.
 

 The state then recalled Baugh on rebuttal. He testified that he spoke to Latonya and that she told him that the defendant likely got the gun from someone named Sam, whom he had been with earlier that day. She told him that the defendant had been crying and walking around with the gun and | fithat she had tried to get him to give it to her. She also thought that he might be on “PCP.” Desadier was also recalled to affirm that he retrieved the gun from the defendant’s back pocket.
 

 The jury returned a verdict of guilty as charged for possession of a firearm by a convicted felon and not guilty for the terrorizing charge.
 

 At the sentencing hearing, the trial court observed that this was the defendant’s second felony conviction; his first was the March 2003 conviction for aggravated assault on a peace officer with a firearm. The trial court then reviewed the defendant’s extensive criminal history, which included a litany of offenses in several jurisdictions. The trial court noted that the defendant had been convicted for offenses that could be considered felonies but were pled down to misdemeanors. These included possession of cocaine in 1994, aggravated battery with a gun in 1995, cruelty to a juvenile and child neglect in 1998, and aggravated battery in 2006. Additionally, the trial court reviewed the defendant’s social history set forth in the presentence investigation report and noted that he had been expelled from high school, had not obtained a GED, had four children, and had not married any of their mothers. The trial court also reviewed the La. C. Cr. P. art. 894.1 factors, and found neither the aggravating factors nor the mitigating factors applicable. However, the trial court did find an undue risk that the defendant would commit another crime if given a suspended sentence or probation, that he is in need of correctional treatment in a custodial environment, and that a lesser sentence would deprecate the seriousness of the crime. Considering all the information before it, ^particularly the defendant’s extensive criminal history, the trial court sentenced the defendant to 13 years at hard labor without benefit of probation, parole, or suspension of sentence, but with credit for time served. The defendant was also fined $1,000 and ordered to pay court costs. No motion to reconsider was filed. This appeal followed.
 

 DISCUSSION
 

 Sufficiency of the Evidence
 

 In a pro se assignment of error, the defendant argues that the officers were
 
 *324
 
 not credible in their testimony. He asserts that there were inconsistencies in their testimony and between their testimony and the narrative report prepared by Baugh. This assignment of error challenges the sufficiency of the evidence.
 

 In reviewing a conviction for sufficiency of the evidence, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Murray,
 
 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488,
 
 writ denied,
 
 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard is legislatively embodied in La. C. Cr. P. art. 821, and it does not allow the appellate court to substitute its own appreciation of the evidence for that of the fact-finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517.
 

 The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. |s Instead, we accord great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753.
 

 To convict of possession of a firearm by a convicted felon, the state must prove: (1) the possession of the firearm; (2) a previous felony conviction; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1;
 
 State v. Husband,
 
 437 So.2d 269 (La.1983);
 
 State v. Robert,
 
 42,036 (La.App.2d Cir.5/9/07), 956 So.2d 750. The general intent to commit the offense may be proved through the actual or constructive possession of the firearm.
 
 State v. Johnson,
 
 2003-1228 (La.4/14/04), 870 So.2d 995. Whether the proof is sufficient to establish possession of the firearm turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances
 
 of
 
 the transaction and proved by direct or circumstantial evidence.
 
 Id.
 

 The state, through the testimony presented and the defendant’s stipulation to his prior felony conviction, proved the requisite elements for possession of a firearm by a convicted felon. Though the testimony of the five officers differed somewhat as to the details of the defendant’s clothing, or lack thereof, and as to which officer took what action during the stop and arrest, they were all consistent in testifying that the firearm was found on lathe defendant and removed from his back pocket. Further, defense counsel did a thorough job of probing the inconsistencies and making the jury aware that the officers’ recollection of the events was imperfect. Additionally, two independent witnesses, Jackson and Colemen, testified that the defendant had a firearm as he walked through the neighborhood while cursing and at times crying. Their testimony placing the gun in the defendant’s possession contradicted the implausible story told by the defendant’s sister in her testimony. The evidence against the defendant was overwhelming, and the jury was within its province to conclude that the defendant was actually in possession of a firearm.
 

 it. This assignment of error is without mer-
 

 
 *325
 

 Fourth Amendment Violation
 

 In this pro se assignment of error, the defendant argues that the arresting officers violated his rights under the Fourth Amendment to the United States Constitution when they arrested him without any reasonable belief that he was engaged in criminal activity. His specific complaint is that the caller never stated that a crime was taking place, thus the police had no probable cause to enter private property with their guns drawn and without confirming his identity or conducting a field interview.
 

 Because the defendant did not file a motion to suppress the evidence seized from him, he is precluded from raising this issue for the first time on appeal. La. C. Cr. P. arts. 703(F) and 841(A). Moreover, there is no merit to his motion. The officers’ actions were warranted pursuant to La. C. Cr. P. art. 215.1, which provides, in part:
 

 ImA. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
 

 B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
 

 C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
 

 The record shows that the responding officers had been told that the defendant was walking through the neighborhood while talking loudly, cursing, and brandishing a pistol. His behavior alarmed residents who observed him, caused them to fear for the safety of the children who were playing outside, and prompted a 911 call. Under these facts, the officers acted well within their authority when they stopped the defendant and searched him for a weapon. After finding the firearm in the defendant’s back pocket, the officers learned from the defendant that he was a convicted felon who was not legally entitled to possess a firearm. Accordingly, the defendant’s detention and subsequent arrest was conducted in accordance with law.
 

 This assignment of error lacks merit.
 

 Double Jeopardy
 

 In this pro se assignment of error, the defendant argues that he was subjected to double jeopardy by the state’s decision to maintain the terrorizing charge against him after the trial court found no probable cause | nto hold him on that charge. He also argues that he could not be convicted for being a felon in possession of a firearm because he received a first-offender pardon for the felony underlying his conviction.
 

 Though the preliminary examination resulted in the trial court finding no probable cause to hold the defendant on the terrorizing charge, the trial court’s finding is not an acquittal for purposes of double jeopardy. As explained in
 
 State v. Ster
 
 ling, 376 So.2d 103 (La.1979), the finding of no probable cause after a preliminary examination merely releases the defendant from custody or bail for that charge but does not determine the validity of the charge or preclude the filing of an indictment or bill of information against him for the same offense. Because the trial
 
 *326
 
 court’s finding at the preliminary examination had no implications for a double jeopardy analysis, the defendant was not wrongly tried for the terrorizing charge, of which he was acquitted.
 

 As to the defendant’s argument regarding his first-offender pardon, the law is clear that such a pardon does not serve as a defense to prosecution for a violation of La. R.S. 14:95.1.
 
 See State v. Wiggins,
 
 432 So.2d 234 (La.1983);
 
 State v. West,
 
 33,133 (La.App.2d cir.3/1/00), 754 So.2d 408.
 

 This assignment lacks merit.
 

 Ineffective Assistance of Counsel
 

 In this last pro se assignment of error, the defendant complains that his attorneys did not conduct a full investigation. This raises the issue of ineffective assistance of counsel. Such claims are better raised in an application for post-conviction relief in the trial court where there is an | ^opportunity for a full eviden-tiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 2007-2190 (La.4/4/08), 978 So.2d 325. Because we cannot address the issue presented on the record before us, this assignment is deferred to post-conviction proceedings, if any.
 

 Sentencing
 

 Appellate counsel argues that the trial court improperly considered, as an aggravating factor, the defendant’s prior felony conviction for aggravated assault on a peace officer. Counsel asserts that the prior felony was an element of the crime for which the defendant was being sentenced and so should not have been considered as a separate factor in sentencing. Excessiveness of the sentence is also argued.
 

 Because the record does not show that the defendant filed a motion to reconsider the sentence, La. C. Cr. P. art. 881.1, appellate review is limited to the bare claim that the sentence is constitutionally excessive.
 
 State v. Martorana,
 
 44,863 (La.App.2d Cir.10/28/09), 27 So.3d 949,
 
 writ denied
 
 2009-2656 (La.5/28/10), 36 So.3d 246. A sentence is constitutionally excessive if it is illegal, grossly disproportionate to the severity of the offense, shocking to the sense of justice, and nothing more than a purposeless and needless infliction of pain and suffering.
 
 See State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992); and
 
 State v. Livingston,
 
 39,390 (La.App.2d Cir.4/6/05), 899 So.2d 733.
 

 | iSThe trial court has broad discretion to sentence within the statutory guidelines. Absent a showing of a manifest abuse of that discretion, a sentence will not be found excessive on appeal.
 
 State v. Guzman,
 
 1999-1753 (La.05/16/00), 769 So.2d 1158;
 
 Livingston, supra.
 

 Possession of a firearm by a convicted felon is punishable by imprisonment at hard labor for not less than 10 years nor more than 20 years without benefit of probation, parole, or suspension of sentence. La. R.S. 14:95.1(B). The defendant’s 13-year sentence is slightly above the statutory minimum. Given his remarkably extensive criminal history, that has spanned his adult years, the sentence cannot be deemed excessive. Moreover, the defendant’s failure to file a motion to reconsider the sentence precludes consideration of his claim that the trial court should not have considered the underlying felony conviction as an aggravating factor. Nevertheless, we observe that the trial court considered all of the defendant’s ex
 
 *327
 
 tensive criminal history and did not appear to consider the underlying felony to be an aggravating factor for sentencing. Even if this claim had been properly presented, it would lack merit.
 

 CONCLUSION
 

 For the reasons stated, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.