Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,286-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

QUINTON DAMONE HILL                         Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 346,581

Honorable Craig Marcotte, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Sherry Watters

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

NANCY BERGER-SCHNEIDER
RICHARD S. FEINBERG
Assistant District Attorneys

* * * * *

Before WILLIAMS, MOORE, and GARRETT, JJ.

**MOORE, J.**

Quinton Damone Hill appeals his conviction of possession of a firearm by a convicted felon, possession of or dealing in a firearm with an obliterated number or mark, and attempted possession of a Schedule IV CDS; his adjudication as a fifth felony offender on the possession of a firearm with an obliterated number or mark; and his sentences of life at hard labor on the fifth felony offense, five years on the attempted possession of CDS, and 2½ years on the other firearms charge.

For the following reasons, we affirm Hill's three convictions and the 2½-year sentence for attempted possession of CDS. However, we vacate the habitual offender adjudication and the sentences for possession of a firearm by a convicted felon and possession of a firearm with obliterated number. We remand the case for a new habitual offender adjudication hearing and resentencing.

## FACTS

On October 20, 2016, the Shreveport Police Department ("SPD") contacted the U.S. Marshal's Violent Offender Task Force Office ("TFO") for the Western District of Louisiana to locate and arrest the defendant, Hill. Hill was wanted on warrants issued in Caddo Parish for attempted second degree murder and possession of a firearm by a convicted felon. TFO officers went to Hill's last known address to make the arrest, but it appeared he was no longer residing there.

Approximately two months passed before TFO officers received information that Hill might be staying with his girlfriend, Latasha Jones, at the Isabella Apartments, on Tristan Loop in Shreveport. For several weeks,

the TFO officers began conducting "spot surveillance"[1] of the Isabella Apartments, where Latasha lived. They frequently observed Latasha's 2014 Kia parked at the apartment complex, which they easily recognized because the vehicle had a blown-out back window and bullet holes in the car. It was not until January 26, 2017, that they saw Hill.

TFO officers Corporal Eric Ardoin and Officer Jeremey Kennedy conducted the spot surveillance of Latasha's apartment from an unmarked Tahoe parked some distance away, to avoid detection. Her 2014 Kia was not parked at the apartment. In the parking space directly in front of her apartment door was a white Lexus sedan they had never seen before, backed in the parking place so that the license plate was not visible.

At approximately 2:00 p.m., Cpl. Ardoin and TFO Kennedy saw Latasha drive up in her Kia with Hill in the passenger seat. The officers took Hill into custody without incident in the parking lot by the mailboxes. Because the arrest warrant stated that Hill was in possession of an AK-47, officers asked Latasha if they could search her residence. She gave officers consent, and they found the AK-47 and a .40 caliber handgun with an obliterated serial number, ammunition, and narcotics as well as a male's clothes and personal belongings. Hill made a number of statements to the officers regarding the items found in Latasha's home.

Hill was initially charged by bill of information on February 21, 2017, with five offenses, but that bill was superseded on May 15, 2017, with an amended bill of information charging Hill with four offenses: possession of

_____

[1] According to testimony, "spot surveillance" is a method whereby police in plain clothes and unmarked cars conduct surveillance of a location for short periods of time at different hours on different days. The purpose of this method is to avoid detection of the surveillance being conducted.

a firearm by a convicted felon (La. R.S. 14:95.1), illegal carrying of a weapon while in possession of a CDS (La. R.S. 14:95(E)), possession of Schedule IV CDS (La. R.S. 40:969(C)), and possession of or dealing in a firearm with obliterated number or mark (La. R.S. 14:95.7). Hill waived formal arraignment and entered a plea of not guilty to the amended bill.

Hill filed a pro se motion to suppress evidence arguing that the weapons and drugs were unlawfully seized from Latasha's residence in violation of the Fourth Amendment. Hill filed a second pro se motion to suppress evidence, reiterating this claim; he attached an affidavit from Latasha in which she stated that Hill did not live with her and did not have access to her apartment. She further stated that Hill "had no knowledge of anything that was in my Apt."

Hill obtained counsel who adopted his pro se motions to suppress at the hearing held on September 11, 2018, the day before trial commenced. Based on the testimony presented, the trial court denied the motions to suppress, to which Hill objected.

Additionally, a free-and-voluntary hearing was held regarding the admissibility of statements Hill made to police when he was arrested. The trial court determined these statements were admissible at trial.

The two-day trial began on September 12, 2018. Cpl. Ardoin and TFO Kennedy testified regarding their arrest of Hill and the search of Latasha's apartment, as well as the items seized therein, including the guns and drugs. Officer Cody Hyde of the SPD testified regarding statements Hill made in his presence while in police custody at the scene of the arrest. Additionally, an SPD fingerprint and identification expert, Lt. Danny Duddy, identified the fingerprints taken from Hill in open court that day and

3

identified them as matching the prints on the bill of information. Randal Robillard, an expert in forensic chemistry and analysis utilizing gas chromatograph mass spectrometers, identified the chain of custody of two tablets seized in the search as Tramadol, a Schedule IV CDS in Louisiana. The tablets were imprinted with the number "319," the mark of the manufacturer of Tramadol. The state's final witness was the property manager of the apartment complex, Antonea Wesley, who testified that she had been the property manager for about a month and a half when Hill was arrested on January 26, 2018. She and her lead manager learned of an incident occurring near the mailboxes of the complex. When they arrived at the scene, police were talking to Latasha Jones. Wesley said she never saw Ms. Jones sign anything; she did not hear the officers threaten or coerce her; and she herself did not threaten or coerce Ms. Jones in any way. Wesley further testified that she was standing nearby when Ms. Jones verbally consented to allow police to search her apartment, and she opened the door to let them in. Wesley testified that she was standing with Ms. Jones when she saw officers remove guns, drugs, a pair of men's tennis shoes and a large black duffel bag from the apartment. She said she had never seen Hill at the complex and said it would be a violation of the lease for a tenant to have a guest stay more than five days.

Following Wesley's testimony, the state rested. The defense presented no evidence. On September 13, 2018, the jury found Hill guilty as charged of possession of a firearm by a convicted felon; not guilty of illegally carrying weapons while in possession of CDS; guilty of attempted possession of Schedule IV; and guilty of possession of or dealing in firearms with obliterated serial numbers or marks. On all counts, the jury's verdict

4

was unanimous.  The trial court ordered a presentence investigation report prior to sentencing.

On October 4, 2018, the state filed a fourth or subsequent felony habitual offender bill of information, based on Count 4, Hill's conviction for possession of a firearm with an obliterated number or mark.

On February 6, 2019, Hill filed a motion for post-verdict judgment of acquittal and a motion for new trial, which the trial court denied.  On the same day, the court held the multiple offender hearing.  Hill was adjudicated a fifth-felony offender based on his conviction for possession of or dealing in firearms with obliterated numbers or marks conviction, to which counsel for Hill objected.

On March 4, 2019, Hill filed a motion to quash the habitual offender bill arguing that multiple convictions obtained on the same day prior to October 19, 2004, should be counted as one felony for the purpose of the habitual offender bill.

On March 28, 2019, the court denied Hill's motion to quash and imposed sentence.  Hill was sentenced to 2½ years for the attempted possession of Schedule IV CDS conviction, 5 years at hard labor for possession of a firearm with an obliterated number or mark, and life imprisonment as an adjudicated habitual offender for possession of a firearm by a convicted felon.  Hill was given credit for time served, with all sentences ordered to run concurrently.

Hill filed a motion to reconsider sentence which was denied by the trial court.  This appeal followed in which Hill raises four assignments of error challenging the denial of his motion to suppress, his habitual offender

adjudication, the sufficiency of evidence to convict, and his sentence as an habitual offender.

## DISCUSSION – SUFFICIENCY OF THE EVIDENCE

When issues are raised on appeal that include the sufficiency of the evidence to convict and one or more trial errors, the reviewing court first determines the sufficiency of the evidence question. *State v. Hearold*, 603 So. 2d 731 (La. 1992). Accordingly, we first consider Hill's third assignment of error, which urges that the state failed to prove possession, knowledge, dominion or control. This assignment raises the question of the sufficiency of the evidence to convict.

Each of Hill's three convictions requires, *inter alia*, proof that he possessed: a firearm (the IMI .40 caliber handgun), a Schedule IV CDS (two Tramadol pills), and a firearm with an obliterated serial number (the IMI .40 caliber handgun). Hill argues that there is a lack of evidence, both circumstantial and direct, that he exercised actual or constructive possession of any of those items. He maintains that when all the evidence is considered in the light most favorable to the prosecution, the circumstances are not sufficient to convince a rational trier of fact that possession was proved beyond a reasonable doubt.

All seized items came from Latasha Jones's apartment. Hill contends that he did not live at the apartment or have keys to it; he was not on the lease, and there was no testimony that he was ever seen entering or exiting Ms. Jones' apartment; the only item found in the apartment with his name on it was his identification card; and there were no bills, mail or other items in the apartment that were determined to belong to him. This evidence, he suggests, was insufficient to prove that he constructively possessed either the

.40 caliber handgun or the Tramadol pills found in the apartment. The evidence, Hill argues, does not rule out the reasonable hypothesis that the handgun and Tramadol pills belonged to Latasha Jones.

Hill further contends that, except for his pretrial statements, the evidence is entirely circumstantial and does not prove possession beyond a reasonable doubt. He claims that his purported admission applies only to the AK-47, a firearm for which he was not charged; his other generic statements were not admissions. Although Cpl. Ardoin testified that Hill said, "I do drugs," Hill argues that he never admitted that the drugs in the apartment belonged to him. Likewise, he argues, TFO Kennedy testified that Hill did not say the handgun or drugs belonged to him. When SPD officers arrived, and he was confronted about the second gun, he never described or claimed the handgun as his own. Hill further argues that the bag of ammunition that also contained his identification card did not contain bullets for the .40 caliber handgun. Therefore, Hill argues, the circumstances are insufficient to prove beyond a reasonable doubt that he possessed the .40 caliber handgun or the Tramadol pills.

In addressing a claim of insufficiency of evidence, the task of the reviewing court is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). This standard of review does not permit the reviewing court to substitute its own appreciation of the facts for that of the factfinder. *State v. Crawford*, 14-2153 (La. 11/16/16), 218 So. 3d 13. Nor does it allow the court to assess the credibility of witnesses or reweigh the evidence. *Id*.

7

Rather, in a sufficiency review, "the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* at 20; *State v. Mussall*, 523 So. 2d 1305 (La. 1988).

The *Jackson* standard applies in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d.

The deference to the fact finder demanded by *Jackson* is not affected when circumstantial evidence forms the basis of the conviction. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. If a case rests essentially upon circumstantial evidence, the reviewing court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, the appellate court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative

8

hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia.*

Hill was convicted of three crimes requiring proof of possession of the contraband item. The state charged two offenses arising out of possession of the IMI .40 caliber handgun: (1) possession of a firearm by a convicted felon, La. R.S. 14:95.1, and (2) possession of a firearm with an obliterated serial number, La. R.S. 14:95.7. Hill was also charged with possession of a Schedule IV CDS, namely, the drug Tramadol, for which he was convicted of attempted possession.[2]

A conviction for possession of a firearm by a convicted felon under La. R.S. 14:95.1, requires the state to prove the following elements beyond a reasonable doubt: (1) the defendant was in possession of the firearm; (2) he was previously convicted of one of the felonies enumerated in La. R.S. 14:2(B); (3) the 10-year statutory period has not passed; and, (4) he had general intent to commit the offense. La. R.S. 14:95.1; *State v. Husband*, 437 So. 2d 269 (La. 1983); *State v. Drayton*, 46,191 (La. App. 2 Cir. 4/13/11), 63 So. 3d 319, *writ denied*, 11-2343 (La. 6/1/12), 90 So. 3d 430.

Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and

---

[2] La. R.S. 14:27(A), states in pertinent part:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La. R.S. 40:969(C) states in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule IV unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978, while acting in the course of his professional practice or except as otherwise authorized by this Part.

control of the object. *State v. Ruffins*, 41,033 (La. App. 2 Cir. 9/20/06), 940 So. 2d 45, *writ denied*, 06-2779 (La. 6/22/07), 959 So. 2d 494.

Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. *State v. Johnson*, 03-1228 (La. 4/14/04), 870 So. 2d 995; *State v. Stephens*, 49,680 (La. App. 2 Cir. 5/20/15), 165 So. 3d 1168; *State v. Heard*, 46,230 (La. App. 2 Cir. 5/18/11), 70 So. 3d 811, *writ denied*, 11-1291 (La. 12/2/11), 76 So. 3d 1175.

Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *State v. Turner*, 46,049 (La. App. 2 Cir. 2/16/11), 57 So. 3d 1209. Such guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. *State v. Johnson*, *supra*.

Hill contends that the evidence was insufficient to prove beyond a reasonable doubt that he had possession, knowledge, dominion or control of the IMI .40 caliber handgun and the drugs seized from Latasha Jones' apartment: he did not live in her apartment; no one, including the police, testified that they ever saw him entering or leaving the apartment, and the manager, Ms. Wesley, testified that she had never seen Hill at the complex; he admitted to police only that he owned or possessed the AK-47, not the IMI .40 handgun, the basis of the convictions; his statement to police, "I do drugs," was no admission that the Tramadol in the apartment belonged to

10

him.  He suggests that the .40 caliber handgun and the drugs could very well belong to Ms. Jones.

At trial, Cpl. Ardoin testified that after he arrested Hill outside the complex, he talked to Latasha Jones, advising her of her rights and that she was not being arrested.  He asked her if Hill was living with her; she replied that he had been staying with her for about three months, which Ardoin said corresponded with the timeline in which Hill had been absent from his last known address.  Ms. Jones said she did not know if there were weapons or drugs in the apartment because she works a lot.  She gave Cpl. Ardoin oral and written consent to search the apartment.

After making sure the apartment was clear of any other occupants, Cpl. Ardoin and TFO Kennedy began searching it.  Cpl. Ardoin began in the kitchen area, where he noticed a white box similar to a cigar box, on the table.  He opened it and observed some pills he recognized as Tramadol based upon his prior experience in drug enforcement.  While Cpl. Ardoin was in the kitchen area, TFO Kennedy found an AK-47 rifle with the stock cut off under the living room couch.

After seizing the AK-47 and drugs, Cpl. Ardoin went back outside to the Tahoe and spoke with Hill about what he had found.  Cpl. Ardoin testified that he replied, "I told him [I] found an AK-47 and some narcotics," admitted these were his, and said that there was nothing else in the house.  This conversation was not recorded by video or sound, but TFO Kennedy was present.

After this unrecorded conversation, Cpl. Ardoin said he and TFO Kennedy went back into the apartment to search a second time.  There was a black duffel bag or suitcase to the right of the front door.  In the bag, he

11

found two fully loaded AK-47 magazines and two fully loaded Glock magazines,[3] which he described as a .40 caliber pistol; a box of .40 caliber ammunition and a plastic bag with some loose rounds; a Louisiana official identification card with Hill's name and picture on it; and men's clothing, including shirts, pants, shoes and underwear.

Cpl. Ardoin further testified that during the second search they found a fully loaded IMI .40 caliber pistol wedged between the sideboard and mattress at the right foot of the master bed. The pistol had a loaded 8-round magazine in it and one bullet in the chamber, both of which were identified at trial. The engraved serial number on the handgun had been filed off.

During the search, an SPD police unit arrived to transport Hill. They moved him from the unmarked Tahoe and into a marked SPD unit, which had an operating video tape recorder. Cpl. Ardoin went out and spoke with Hill a second time. He said Hill asked him what he found and what he was being charged with. Cpl. Ardoin told him he found the AK-47, narcotics and a pistol that Hill had not told him about earlier. Ardoin testified that Hill said that the chopper (AK-47) and the pistol were all he had in there; and the drugs were not personal use drugs, though he said he used drugs.

A videotape of the conversation in the SPD unit was played several times. On cross-examination, the defense pointed out that Hill did not actually claim that the two guns were his or in his possession, only that "those two guns are in there and that's it." However, Cpl. Ardoin testified he understood Hill to mean that he was admitting that he had two guns in there, but no more.

_____

[3] Cpl. Ardoin later corrected this testimony, and identified the two Glock magazines as holding .357 caliber bullets, not .40 caliber bullets.

12

All the items seized, including the guns, bullets, magazines and Ms. Jones's signed consent form, were identified and placed into evidence.

TFO Kennedy also testified and corroborated Cpl. Ardoin's testimony regarding Jones's oral and written consent to search her apartment. Kennedy said the apartment appeared to be lived-in with furniture and clothes scattered about. He saw male clothing in the bedroom, the closet, and in the black duffel bag. He said that he found the AK-47 and identified the narcotics and .40 caliber handgun that Cpl. Ardoin found.

TFO Kennedy said he heard Ms. Jones say that Hill did not live there but that he had "stuff" in the apartment. He said he heard Hill say, "That's my chopper. That's my pistol. That's the only two I have." This led him to believe that Hill was asserting ownership or possession of the AK-47 and handgun.

Officer Cody Hyde testified that he arrived at the scene when Hill was already in custody. He placed Hill in his patrol car, which was equipped with an audio and visual recording system. Hyde heard Hill, who was seated behind him in the vehicle, admit to possibly having Tramadol and Ecstasy pills in the residence. He also said that Hill said there was a "chopper" and .40 caliber handgun inside.

As noted, forensic evidence confirmed that the two pills found in the apartment were Tramadol, a Schedule IV CDS.

Though the .40 caliber handgun and CDS in question were found in an apartment leased only to Ms. Jones, the evidence indicates that Hill was living there, perhaps temporarily, and that he had knowledge of the guns therein. Further, Hill's duffel bag, containing ammunition, his ID card and clothing, was found in the apartment. Other items of a man's clothing were

13

also found in the apartment. Cpl. Ardoin testified that Ms. Jones stated she was considering throwing Hill out of her apartment and had put some of his things in a bag. The handgun in question was found in Ms. Jones's bedroom between the sideboard and mattress, at the foot of the bed. Testimony from Cpl. Ardoin and TFO Kennedy and the recording of Hill established that either Hill admitted that the handgun and drugs belonged to him or that he knew the guns were present in the apartment, since the jury considered and rejected Hill's hypothesis that they belonged to or were possessed by Jones.

Appellate courts do not assess the weight and credibility of evidence. Those assessments are the province of the fact finder, and we give great deference to their conclusions. Our review shows that Hill's statements to the officers demonstrated his knowledge of the handgun and CDS seized in the apartment. However, even absent these admissions, the circumstantial evidence presented to the jury that Hill was living in the apartment and knew the presence of the weapons, is arguably sufficient to prove he had constructive possession of the handgun and narcotics.[4] We therefore

---

[4] Courts routinely find construction when a gun is found in an area customarily occupied by the defendant. *State v. Law*, 45,435 (La. App. 2 Cir. 8/11/10), 46 So. 3d 764; *State v. Johnson*, 11-238 (La. App. 5 Cir. 12/28/11), 83 So. 3d 1075. *See State v. Mose*, 412 So. 2d 584 (La. 1982) (gun located in the defendant's bedroom was sufficient for constructive possession); *State v. Mickel*, 09-953 (La. App. 5 Cir. 5/11/10), 41 So. 3d 532, *writ denied*, 10-1357 (La. 1/7/11), 52 So. 3d 885 (gun was under the defendant's dominion and control because it was found in a shoebox underneath the bed where he customarily slept); *State v. Roundtree*, 44,817 (La. App. 2 Cir. 3/3/10), 41 So. 3d 512 (the defendant was in constructive possession of a gun found protruding from between the mattress and box spring of the bed in which the defendant had been sleeping; the defendant's girlfriend's testimony that she owned the gun and that the defendant had no knowledge of the gun was unconvincing); *State v. Drake*, 45,172 (La. App. 2 Cir. 5/19/10) 37 So. 3d 582, *writ denied*, 10-1468 (La. 1/14/11), 52 So. 3d 899 (evidence was sufficient for constructive possession when weapons were found in plain view in the defendant's residence, such that he would have been aware of their presence and would have exercised dominion and control over the weapons); *State v. Lewis*, 535 So. 2d 943 (La. App. 2 Cir. 1988), *writ denied*, 538 So. 2d 608 (1989), *cert. denied*, 493 U.S. 963, 110 S. Ct. 403, 107 L. Ed. 2d 370 (1989) (presence of firearms in the defendant's home, statement by the defendant that one gun belonged to his wife, and discovery of shoulder holster in the master bedroom indicated the defendant's awareness, dominion, and control over the firearms); *State v. Jackson*, 97-1246 (La. App. 5 Cir. 4/13/98), 712 So. 2d 934,

conclude that, viewing the evidence and Hill's statements in the light most favorable to the prosecution, evidence was sufficient for the jury to conclude beyond a reasonable doubt that Hill was guilty of possession of a firearm by a convicted felon, possession of or dealing in a firearm with obliterated number or mark, and attempted possession of Tramadol.

This assignment of error is without merit.

## MOTION TO SUPPRESS

By his first assignment of error, Hill alleges that the trial court erred in denying the motion to suppress the evidence. He argues that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home," citing *Kirk v. Louisiana*, 536 U.S. 635, 122 S. Ct. 2458, 153 L. Ed. 2d 599 (2002). Accordingly, the warrantless search was "presumptively unreasonable," and the items seized from Ms. Jones's apartment and used against him are the fruits of an illegal search and seizure. Furthermore, he challenges whether Ms. Jones's consent was valid, as the consent form misspelled her name, and it purported to advise her of her rights, but the only rights that Cpl. Ardoin advised her of was her Fifth Amendment right to remain silent, not probable cause and warrant requirements. Moreover, Ms. Jones was afraid that she would be arrested if she did not cooperate and officers used this fear to secure her consent. Once the apartment manager, Ms. Wesley, became involved, Ms. Jones feared she would be evicted if she did not consent.

---

*writ denied*, 98-1454 (La. 10/16/98), 726 So. 2d 37 (evidence was sufficient to prove that the defendant knowingly possessed a gun found in his bedroom under the mattress where he regularly slept, despite the argument that other friends and relatives had stayed in the defendant's bedroom during a recent visit and that the gun could have belonged to them).

15

We review a trial court's ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a de novo review to findings of law. *State v. Manning*, 51,450 (La. App. 2 Cir. 8/9/17), 244 So. 3d 600, *writ denied*, 17-1575 (La. 5/18/18), 242 So. 3d 575 ("*State v. Manning II*"). A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. *Id.; State v. Prince*, 50,548 (La. App. 2 Cir. 4/13/16), 195 So. 3d 6.

The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5, of the 1974 Louisiana Constitution. A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless it can be justified under one of the narrowly drawn exceptions to the warrant requirement. *State v. Thompson*, 02-0333 (La. 4/9/03), 842 So. 2d 330; *State v. Tatum*, 466 So. 2d 29 (La. 1985); *State v. Manning*, 50,591 (La. App. 2 Cir. 5/18/16), 196 So. 3d 626, *writ denied*, 17-1575 (La. 5/18/18), 242 So. 3d 575 ("*State v. Manning I*"). The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. *Donovan v. Dewey*, 452 U.S. 594, 101 S. Ct. 2534, 69 L. Ed. 2d 262 (1981); *State v. Thompson*, *supra*; *State v. Manning I*, *supra*.

The prohibition against warrantless searches does not apply to a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*,

16

412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). To be valid, consent must be (1) free and voluntary, in circumstances that indicate the consent was not the product of coercion, threat, promise, pressure or duress that would negate the voluntariness; and (2) given by someone with apparent authority to grant consent, such that the police officer reasonably believes the person has the authority to grant consent to search. *State v. Howard*, 15-1404 (La. 5/3/17), 226 So. 3d 419; *State v. Boyette*, 52,411 (La. App. 2 Cir. 1/16/19), 264 So. 3d 625.

Hill neither complained that Ms. Jones's name was misspelled nor challenged the validity of her consent form in his motion to suppress, or during the hearing. He argued that the drugs and weapons were unlawfully obtained due to an illegal search and seizure of her residence. As such, any arguments challenging the validity of Ms. Jones' signature on the consent to search form that were not raised at the trial court are not properly before this court.

At the hearing on the motion to suppress, Ardoin, Kennedy and Ms. Wesley all testified there, as they also did at trial. Each testified that Ms. Jones freely and voluntarily gave consent to search her apartment. In particular, Cpl. Ardoin testified at the suppression hearing that Jones asked if she had to let officers search her apartment; he responded that she did not have to give consent, but that officers could get a warrant to search her home instead. This testimony further showed that Ms. Jones's consent was knowing and voluntary, in that she understood that she did not have to consent to the search, but chose instead to allow the officers to search. Additionally, the state introduced into evidence a copy of the consent to search form she signed, giving the officers consent to search her home. Hill

presented no evidence that this consent was the result of coercion, threat, promise, pressure or duress.

On review, we conclude that the suppression hearing transcript and the trial transcript show that the trial court did not abuse its discretion in denying Hill's motion to suppress. The trial court accepted the officers' testimony that Ms. Jones gave consent to search her apartment. As consent is an exception to the warrant requirement, Hill has failed to show that the trial court erred in denying his motion to suppress.

This assignment is without merit.

## THE HABITUAL OFFENDER ADJUDICATION AND SENTENCES

By his second assignment, Hill alleges that the trial court erred by finding him to be a multiple felony offender when: (a) the habitual offender bill was based on the verdict as to Count 4, possession of a weapon with an obliterated serial number, but the court erroneously used the verdict for possession of a firearm by a convicted felon; (b) two of the predicate convictions that were used occurred on the same date; and/or (c) the prior 2008 manslaughter conviction cannot be used to enhance the conviction for violation of R.S. 14:95.1 (Count 1) and also serve as a predicate under R.S. 15:529.1.[5] Any of these errors, Hill argues, requires that the multiple offender adjudication be vacated.

Furthermore, Hill argues, since the 2008 manslaughter conviction cannot be used as a predicate in the multiple bill, and the next predicate

---

[5] In other words, Hill contends that the felony element used by the state in the current conviction for possession of a firearm by a felon was the 2008 manslaughter conviction, so it cannot "double-dip" by using it again as a predicate conviction for the habitual offender bill.

18

conviction is from 2004, which is outside the cleansing period for the instant charges, the multiple offender adjudication should be vacated.

The state presents no argument in brief regarding the habitual offender adjudication and sentencing. It concedes that the case should be remanded for resentencing.

Our review of the habitual offender transcript shows the following ruling by the court:

> So all five of them would be within ten years of the other ones. And, therefore, this court finds Mr. Quinton Hill a fifth habitual offender having been found guilty or pled guilty of the instant charge *being possession of a firearm with obliterated serial number,* which is a felony, the next being simple burglary-- excuse me, the manslaughter, which was in docket 250193, which conviction was on 2/21/2008, and the other one being IPST,[6] in docket 232370, 2/2/2004, the fourth being 224752, 4/24/2003, IPST, and the fifth being the simple burglary, in docket 223164, on 4/24/2003. So five convictions, *the instant being the firearm with obliterated mark or number* and the other four being simple burglary, IPST, another IPST and a manslaughter charge. (Emphasis added).

This passage plainly shows that the court adjudicated Hill a fifth felony habitual offender on the conviction charged in the bill, i.e., possession of a firearm with an obliterated serial number. There is no merit to Hill's argument that the habitual offender adjudication was based on the conviction for possession of a firearm by a convicted felon. On the other hand, the trial court erred by sentencing Hill as a habitual offender for his conviction of possession of a firearm by a convicted felon instead of the conviction for possession of a firearm with an obliterated serial number.

Additionally, Hill's claim that the trial court erred by treating his two April 24, 2003, felony convictions as two separate predicate offenses has

---

[6] Illegal possession of stolen things.

merit pursuant to La. R.S. 15:529.1(B): "Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section." The two convictions in question were both on April 4, 2003 – prior to October 19, 2004.

Our error patent review of the record also shows that the state failed to prove that the cleansing period between Hill's release from his prior convictions and the commission of the instant offense on January 26, 2017, has not lapsed, under *State v. Lyles*, 19-00203 (La. 10/22/19), 286 So. 3d 407. In *Lyles*, the Supreme Court considered the effect of 2017 La. Acts, No. 282, and 2018 La. Acts, No. 542, and it concluded that the legislature has created three categories of persons affected by the revision of R.S. 15:529.1. It appears that Hill may qualify for the third category, those "persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018 [the effective date of Act 542]." Those persons are eligible to receive the benefit of the reduced cleansing period, but their sentences are calculated with reference to the penalties in effect of the date of the offense. *Lyles, supra* at 410; La. R.S. 15.529.1(K)(2).[7]

Without evidence that the prior convictions did not fall within the applicable cleansing periods, there is insufficient evidence to support Hill's

---

[7] While this is a matter for the sentencing court to decide, our reading of *Lyles* suggests that Hill falls in the third category because Hill's conviction occurred on September 13, 2018, so it will be final after November 1, 2017, i.e., the effective date of Act 282; and, the habitual offender bill against Hill was filed on October 4, 2018, which is after August 1, 2018, the effective date of Act 542. Hence, it appears that Hill should receive the reduced cleansing period by operation of Subsection K(2) added by Act 542. However, Hill's sentence should be calculated with reference to the penalties in effect on the date of the offense, which is January 26, 2017.

adjudication as a habitual offender. This constitutes error patent. *State v. Robinson*, 47,427 (La. App. 2 Cir. 10/3/12), 105 So. 3d 751.

Finally, by his fourth assignment, Hill alleges that the trial court erred in imposing a mandatory sentence of life imprisonment as a multiple offender when the predicates for the sentence were not proved and the life sentence was not authorized under R.S. 15:529.1.

Because we have concluded that the habitual offender adjudication is fatally flawed and the court mistakenly imposed the habitual offender sentence for possession of a firearm by a convicted felon rather than possession of a firearm with an obliterated serial number, we vacate the sentences imposed for those two convictions. Further review of the assigned sentencing errors is therefore moot.

## CONCLUSION

For the reasons stated, we affirm Hill's three convictions and the 2½-year sentence for attempted possession of a Schedule IV CDS. We vacate the habitual offender adjudication and sentences for possession of a firearm by a convicted felon and possession of a firearm with an obliterated serial number. We remand to the trial court for a new habitual offender adjudication hearing and resentencing pursuant to *State v. Lyles, supra.*

**CONVICTIONS AFFIRMED; SENTENCE FOR ATTEMPTED POSSESSION OF SCHEDULE IV CDS AFFIRMED; HABITUAL OFFENDER ADJUDICATION VACATED; SENTENCES FOR POSSESSION OF FIREARM BY FELON AND POSSESSION OF FIREARM WITH OBLITERATED SERIAL NUMBER VACATED; REMANDED WITH INSTRUCTIONS.**